NEW JERSEY STATE CHAMBER OF COMMERCE, Chemical Industry Council of New Jersey, New Jersey Business and Industry Association, Chemical Specialties Manufacturers Association, Inc., Merck & Co., Inc., Magnesium Elektron, Inc., CP Chemicals, Inc., Chem-Mark, Inc., Exxon Chemical Americas, a division of Exxon Chemical Company, a division of Exxon Corporation, Schering Corporation, Essex Chemical Corporation, Ingersoll-Rand Company, and Shell Chemical Company, a division of Shell Oil Company

v.

Robert E. HUGHEY, Commissioner of Environmental Protection; J. Richard Goldstein, M.D., Commissioner of Health, and William Van Note, Acting Commissioner of Labor and The State of New Jersey and Amy Piro, Acting Public Advocate of the State of New Jersey; New Jersey State Industrial Union Council, AFL–CIO (IUC); Citizen Action of New Jersey; Philadelphia Area Project on Occupational Safety & Health (PHILAPOSH); New Jersey Environmental Lobby; New Jersey State Firemen's Mutual Benevolent Association (FMBA); International Association of Firefighters, New Jersey AFL–CIO (IAFF); Communication Workers of America, AFL–CIO (CWA); District Three, International Union of Electronic, Electrical, Technical, Salaried and Machine Workers, AFL–CIO (IUE); International Ladies' Garment Workers' Union, AFL–CIO (ILGWU); Amalgamated Clothing and Textile Workers Union, AFL–CIO, Central and South Jersey Joint Board (ACTWU); United Paperworkers International Union, AFL–CIO (UPIU); Oil, Chemical and Atomic Workers Union, AFL–CIO, Locals 8–149, 8–760, and 8–5570 (OCAW); United Auto Workers Union, AFL–CIO, Local 502 (UAW); Chemical Workers Association, Inc.; Independent Oil Workers Union; Trenton Education Association; Aluminum, Brick & Glass Workers International Union, AFL–CIO, Local 514–G; Pennsylvania Federation, Brotherhood of Maintenance of Way Employees, AFL–CIO; Coalition Against Toxics; League of Conservation Voters (New Jersey); Clean Water Action (Washington, D.C. and New Jersey); Student Public Interest Research Group of New Jersey (N.J. PIRG); Environmental Action (Washington, D.C.); League of Women Voters of New Jersey; Sierra Club (New Jersey); American Lung Association of New Jersey; New Jersey Tenants Organization (NJTO); New Jersey Association of County Health Officers; and New Jersey Health Officers Association, Defendant-Intervenors,

FRAGRANCE MATERIALS ASSOCIATION OF the UNITED STATES, Flavor and Extract Manufacturer's Association, Bush Boake Allen, Inc., Dragoco, Inc., Firmenich, Inc., International Flavors and Fragrances, Inc., Isogenics, Inc., H.J. Kohnstamm & Co., Inc., V. Mane Files, Inc., Noville Essential Oil Company, Inc., Polarome Manufacturing Corp., Roure Bertrand DuPont, Inc., Takasago USA Inc., Ungerer & Co., and Universal Fragrance Corporation

v.

William VAN NOTE, Acting Commissioner of Labor for State of New Jersey; J. Richard Goldstein, Commissioner of Health for State of New Jersey; Robert E. Hughey, Commissioner of Environmental Protection for State of New Jersey.

Appeal of Robert E. HUGHEY, J. Richard Goldstein, M.D., and William Van Note, Appellants in No. 85–5087.

Appeal of Amy PIRO, Acting Public Advocate of the State of New Jersey, et al., Defendant-Intervenors, Appellants in No. 85–5088.

Appeal of NEW JERSEY STATE CHAMBER OF COMMERCE, et al., Appellants in No. 85–5095.

Nos. 85–5087, 85–5088 and 85–5095.

United States Court of Appeals, Third Circuit.

Argued June 18, 1985.

Decided Oct. 10, 1985.

Theodore M. Lieverman, Philadelphia, Pa., for amici curiae, The Hon. Mark B. Cohen, et al.

Robert W. Thomson, Debra M. Coulson, Blair S. McMillin, Reed Smith Shaw & McClay, Pittsburgh, Pa., for amici curiae, Manufacturers Ass'n of Tri-County, Appleton Papers, Inc., Ellwood City Forge Corp. and McDanel Refractory Co.

John J. Carlin, Jr. (argued), Lisa Pollak, Martin Cronin, Farrell, Curtis, Carlin & Davidson, Morristown, N.J., for N.J. State Chamber of Commerce, et al.

John P. McKenna (argued), Daniel F. Shea, McKenna & Shea, Washington, D.C., Daniel R. Thompson, Law Offices of Daniel R. Thompson, Washington, D.C., for Fragrance Materials Ass'n, et al.

Paul Bardacke, Atty. Gen., Douglas Meiklejohn, Christopher D. Coppin, Asst. Attys. Gen., Santa Fe, N.M., for amici curiae, the State of N.M. and the New Mexico Environmental Imp. Div.

Irwin I. Kimmelman, Atty. Gen. of N.J., Michael R. Cole, First Asst. Atty. Gen., Michael S. Bokar, Deputy Atty. Gen. (argued), Trenton, N.J., for defendant Robert E. Hughey, Com'r of Environmental Protection, et al.

Amy Piro, Acting Public Advocate of New Jersey, Richard A. Goldberg, Sharon A. Treat, Asst. Deputies Public Advocate, Div. of Public Interest Advocacy, Trenton, N.J., Reitman, Parsonnet, Maisel & Duggan, Sidney Reitman, Bennett D. Zurofsky (argued), Newark, N.J., Public Interest Law Center of Philadelphia, Jerome Balter, Philadelphia, Pa., for Amy Piro, Acting Public Advocate, et al.

Before GIBBONS and BECKER, Circuit Judges, and DIAMOND, District Judge.*

* Hon. Gustave Diamond, United States District Judge for the Western District of Pennsylvania, sitting by designation.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

This is an appeal from a final summary judgment in consolidated actions challenging the constitutionality of the New Jersey Worker and Community Right to Know Act, N.J.Stat.Ann. § 34:5A–1 to –31 (West 1984), which requires the disclosure of substances that may pose environmental hazards. The plaintiffs [1] contend that the statute is preempted in its entirety by the federal Occupational Safety and Health Act of 1970, Pub.L. No. 91–596, 84 Stat. 1590 (1970), *codified at,* 29 U.S.C. §§ 651–678 (1982) (OSH Act), and that the disclosure requirements are an unreasonable exercise of the state's police power which will result in a taking of trade secrets without due process. The district court, 600 F.Supp. 606 (D.N.J.1985), held that the Right to Know Act, as applied to workers in the manufacturing sector,[2] is preempted by the OSH Act and OSHA's Hazard Communication Standard, 29 C.F.R. § 1900.1200 (1984). The district court further held that the provisions of the Right to Know Act that apply to employers outside the manufacturing sector are unseverable. The court therefore permanently enjoined enforcement of the Act against employers in the manufacturing sector until the state submits a plan to the Secretary of Labor, pursuant to 29 U.S.C. § 667(b), and obtains his approval of the state enforcement plan. The court also entered a declaratory judgment that the Act is not a taking of trade secrets without due process, and is not preempted as applied to employers not in the manufacturing sector. All parties appeal. Since we review a summary judg-

ment our review is plenary. We affirm in part and reverse in part.

### I.

### The Right to Know Act

The legislative findings and declaration of purpose are included in the statute, which provides in relevant part:

> [T]he proliferation of hazardous substances in the environment poses a growing threat to the public health ... [and] individuals have an inherent right to know the full range of risks they face so that they can make reasoned decisions and take informed action concerning their employment and their living conditions.
>
> ... [L]ocal health, fire, police, safety and other government officials require detained [sic] information about the identity ... of hazardous substances ... in order to adequately plan for, and respond to, emergencies....
>
> ... [T]he toxic contamination of the air, water, and land in this State has caused a high degree of concern among its residents ... [which is] needlessly aggravated by the unfamiliarity of these substances to residents.
>
> The Legislature therefore determines that it is in the public interest to establish a comprehensive program for the disclosure of information about hazardous substances in the workplace and the community, and to provide a procedure whereby residents of this State may gain access to this information.

N.J.Stat.Ann. § 34:5A–2 (West 1984). Thus the New Jersey Legislature intended the Right to Know Act to make informa-

---

1. The plaintiffs include the New Jersey State Chamber of Commerce, three chemical and business associations, eight pharmaceutical and chemical companies, the Fragrance Materials Association of the United States, the Flavor and Extract Manufacturers' Association, and thirteen corporations which manufacture, compound, mix, or blend fragrances. The original defendants are the New Jersey Commissioners of Environmental Protection, Health, and Labor, and the State. The New Jersey Public Advocate and twenty-nine labor unions and en-

vironmental organizations are intervening defendants.

2. The Hazard Communication Standard regulates employers who are "engaged in a business within SIC [Standard Industrial Classification] Codes 20–39 where chemicals are either used, or are produced for use or distribution." 29 C.F.R. § 1910.1200(c) (1984). SIC Codes 20–39 correspond to the manufacturing sector of the economy. For purposes of this opinion, "manufacturing sector" shall be considered synonymous with SIC Codes 20–39.

tion about toxic chemicals available, (1) to all New Jersey residents who might be exposed to such chemicals, in the workplace or elsewhere, and (2) to public safety officers who might need such information to prevent, or respond to, emergencies.

The Right to Know Act directs the New Jersey Department of Environmental Protection (DEP) to develop an environmental hazardous substance list, which must contain:

> substances used, manufactured, stored, packaged, repackaged, or disposed of or released into the environment of the State which, in the department's determination, may be linked to the incidence of cancer; genetic mutations; physiological malfunctions, including malfunctions in reproduction; and other diseases; or which, by virtue of their physical properties, may pose a threat to the public health and safety.

N.J.Stat.Ann. § 34:5A–4(a). The DEP promulgated such a list pursuant to the Act. N.J.Admin.Code tit. 7, § 1G–2.1 (1984). DEP is further directed to develop an environmental survey "designed to enable employers to report information about environmental hazardous substances at their facilities." N.J.Stat.Ann. § 34:5A–4(b).

A separate section of the Act directs the Department of Health to develop a workplace hazardous substance list which must include: (1) all substances regulated by the Occupational Safety and Health Administration (OSHA) under 29 C.F.R. § 1910, subpart z; (2) all environmental hazardous substances; and (3) all substances that "pose[ ] a threat to the health or safety of an employee." N.J.Stat.Ann. § 34:5A–5(a). The workplace hazardous substance list, therefore, by definition includes all substances on the environmental hazardous substance list, and may include some additional substances. The list as promulgated is codified at N.J.Admin.Code, tit. 8, § 59 App. A (1984). The Department of Health must develop a "hazardous substance fact sheet" for every item on the workplace hazardous substance list. N.J.Stat.Ann. § 34:5A–5(d). The Department of Health

is further directed to designate a "special health hazard substance list" indicating those substances that are so dangerous that employers will not be permitted to make a trade secret claim as to them. N.J. Stat.Ann. § 34:5A–5(b). Finally, the Department of Health is directed to develop a workplace survey to facilitate reporting of workplace hazardous substances by employers. N.J.Stat.Ann. § 34:5A–5(c).

Employers must provide completed surveys to county health departments, local fire and police departments, and to the Department of Health (workplace surveys) or the DEP (environmental surveys). N.J. Stat.Ann. § 34:5A–7. Upon receipt of an employer's completed workplace survey, the Department of Health must provide the employer with a hazardous substance fact sheet (prepared by the Department, pursuant to section 5(d) of the Act) for each hazardous substance reported by that employer. N.J.Stat.Ann. § 34:5A–8(a). The Department of Health must keep the workplace surveys on file, and make them available to any person who submits a written request. N.J.Stat.Ann. § 34:5A–10. Likewise, DEP must maintain a current file of environmental surveys and make them available to any person who makes a written request. N.J.Stat.Ann. § 34:5A–9. The Act provides that "any person" may obtain access to environmental and workplace surveys; this information is not limited to employees.

Several sections of the Act are designed to ensure that information about hazardous substances is communicated to employees in particular. Employers must maintain a central file of workplace and environmental surveys, and notify employees of the file's availability. N.J.Stat.Ann. § 34:5A–12. Each employer must also implement an employee education and training program designed to inform employees of the risk of hazardous chemicals, and to train them in precautions for safe handling of hazardous substances in the workplace. N.J.Stat. Ann. § 34:5A–13. The Act also requires employers to label containers of hazardous substances. N.J.Stat.Ann. § 34:5A–14.

The Act allows employers to assert a trade secret claim against disclosure of confidential information "which is not patented, which is known only to an employer and certain other individuals, and which is used in the fabrication and production of an article of trade or service, and which gives the employer possessing it a competitive advantage over businesses who do not possess it...." N.J.Stat.Ann. §§ 34:5A-3, 34:5A-15. Employers may not, however, refuse to disclose information about substances that are on the "special health hazard substance list." N.J.Stat.Ann. § 34:5A-5(b).

## II.

### Preemption

Whether a state law is preempted by a federal statute is a question of congressional intent. Preemption may be found if, on the face of the federal statute, Congress expressly stated an intent to preempt a state law. *Fidelity Federal Savings and Loan Association v. de la Cuesta,* 458 U.S. 141, 152–53, 102 S.Ct. 3014, 3022–23, 73 L.Ed.2d 664 (1982). Even if there is no such express preemption, an intent to preempt state law will be implied if: (1) it is impossible to comply with both the state and the federal law, or (2) "the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Silkwood v. Kerr-McGee Corporation,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984). Administrative regulations promulgated pursuant to congressional authorization have the same preemptive effect as federal statutes. *Fidelity Federal,* 458 U.S. at 153–54, 102 S.Ct. at 3022–23.

### A. Express Preemption

The Chamber of Commerce and the Fragrance Materials Association contend that the entire Right to Know Act is expressly preempted by the Occupational Safety and Health Act of 1970 (OSH Act), 29 U.S.C. §§ 651–678 (1982), and by the Hazard Communication Standard, 29 C.F.R. § 1900.1200 (1984), promulgated pursuant

to the OSH Act. Our decision in *United Steelworkers of America v. Auchter,* 763 F.2d 728, 738 (3d Cir.1985), compels a holding that the OSH Act and the Hazard Communication Standard preempt the Right to Know Act "with respect to disclosure to employees in the manufacturing sector." *Id.* at 736. We are left with the question not resolved by *Steelworkers:* to what extent are the other provisions of the New Jersey Right to Know Act preempted by the Hazard Communication Standard?

As we held in *Steelworkers,* section 18 of the OSH Act expressly preempts state law pertaining to issues that are addressed by OSHA standards unless a state plan has been approved by the Secretary. 763 F.2d at 733–34. Section 18(a) of the OSH Act expressly gives the states authority to regulate matters that are not governed by a standard.

> Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect....

29 U.S.C. § 667(a). The statute provides that states may develop and enforce "standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated" if the state submits a plan to OSHA, and OSHA approves that plan. 29 U.S.C. § 667(b). The Fragrance Materials Association contends that these provisions should be read expansively to preempt expressly all state statutes that "relate to" a safety or health issue for which a standard has been promulgated. Br. at 10–22. The Association further contends that all provisions of the Right to Know Act relate to issues that are regulated by the Hazard Communication Standard, and that the New Jersey statute is thus preempted in its entirety.

We reject this broad reading of the preemptive effect of OSHA standards. The Fragrance Materials Association cites a number of cases in support of its contention that Congress' language in the OSH

Act "evidences a sweeping preemptive intent." Br. at 11. The cases cited,[3] however, all involve interpretations of the preemption language of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1982), which is much more explicit than the language of the OSH Act. (The ERISA provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a)).

The preemption language of the OSH Act must be read with the overall purpose of the Act "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions...." 29 U.S.C. § 651(b). In light of this purpose and the plain language of section 18 of the OSH Act, it seems clear that the state laws are expressly preempted only to the extent that a federal standard regulating the same issue is already in effect. It would thwart the overriding congressional intent to promote worker safety if federal standards preempted state laws governing issues that are not federally regulated.

Because OSHA standards by definition govern occupational safety and health issues, they do not preempt state laws that regulate other concerns. The Secretary has authority to promulgate standards only as to occupational safety and health and those standards cannot have a preemptive effect beyond that field. Indeed the Secretary argued in *Steelworkers* that the Hazard Communication Standard should not preempt state laws addressing "general environmental problems originating in the workplace, but whose effects are outside it...." Secretary's Br. at 88, *Steelworkers*. The contention of the various New Jersey business interests that Congress intended the OSH Act to preempt all the environmental protection provisions of the New Jersey law is unpersuasive. We hold

that the New Jersey Right to Know Act is expressly preempted by the OSH Act and the Hazard Communication Standard only insofar as the New Jersey Act pertains to protection of employee health and safety in the manufacturing sector.

### B. Implied Preemption

Other portions of the New Jersey Act might still be preempted, however, under the doctrine of implied preemption, if it is impossible to comply with both the New Jersey law and the Hazard Communication Standard, or if enforcement of the New Jersey Act will thwart congressional purpose. It should be noted from the outset that the mere fact that a state law provision increases the regulatory burden on employers does not make the state law provision contrary to congressional intent. Although OSHA declared that the federal Hazard Communication Standard was designed "to reduce the regulatory burden posed by multiple state laws," 48 Fed.Reg. 53284, the legislative history of the OSH Act does not indicate that Congress was significantly concerned with reducing the regulatory burden. *See Steelworkers*, 763 F.2d at 734.

Each section of the Right to Know Act must be examined to determine whether it must be held to be preempted by federal law. We may hold a section preempted only if it is clear that Congress would have intended to preempt such a provision. *See Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 634, 101 S.Ct. 2946, 2962, 69 L.Ed.2d 884 (1981). As this court recently noted:

> Preemption must either be explicit, or compelled due to an unavoidable conflict between the state law and the federal law. Consideration of whether a state provision violates the supremacy clause starts with the basic assumption that Congress did not intend to displace state law.

**3.** *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983); *American Progressive Life and Health Insurance Co. v. Corcoran,* 715 F.2d 784, 786 (2d Cir.1983); *Buczynski v. General Motors Corp.,* 616 F.2d 1238, 1250 (3d Cir.1980), *aff'd Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 522–25, 101 S.Ct. 1895, 1905–07, 68 L.Ed.2d 402 (1981); *California Chamber of Commerce v. Simpson,* 601 F.Supp. 104, 107–09 (C.D.Cal.1985).

*Penn Terra Ltd. v. Department of Environmental Resources*, 733 F.2d 267, 272–73 (3d Cir.1984) (citations omitted). A section should be held to be preempted, therefore, only to the extent that: 1) it is expressly preempted because it regulates communication of hazards to employees in the manufacturing sector; 2) it is impossible to comply both with state law and with federal law; or 3) the provision serves as an obstacle to the accomplishment of Congress' object in the OSH Act to promote safe and healthful working conditions.

## C. Preemption of the Right to Know Act

Applying these legal standards for preemption, we have examined each section of the Right to Know Act. Listed in the margin are those sections which in our view unquestionably present no issue of express or implied preemption.[4] We will discuss only those sections as to which some plausible preemption contention may be made.

### 1. State Hazardous Substance Lists

Sections 34:5A–4(a) and (5)(a) direct the New Jersey DEP and Department of Health to develop environmental and workplace hazardous substance lists. Sections 34:5A–4(b) and 5(c) direct those departments to develop environmental and workplace hazard surveys for employers to report hazardous substances. Section 34:5A–5(d) requires the Department of Health to develop hazardous substance fact sheets for each hazardous substance. In these provisions, New Jersey has opted for a different hazard identification procedure than that adopted in the federal Hazard Communication Standard, which depends primarily upon identification of hazards by the original manufacturer or importer of the substance. 29 C.F.R. § 1910.1200(d). *See Steelworkers*, 763 F.2d at 732. New Jersey's undertaking to develop its own list of hazardous substances through governmental agencies, and to make surveys of environmental and workplace hazards in all sectors of the economy, will in no way inhibit the implementation of the federal

4. 34:5A–1 — Title
34:5A–2 — Legislative findings and declarations
34:5A–3 — Definitions
34:5A–4(c) — Spanish translation
34:5A–4(d) — Deadlines
34:5A–5(d) — Department of Health must develop hazardous substance fact sheets
34:5A–5(e) — Spanish translation
34:5A–5(f) — Deadlines
34:5A–6 — Distribution of workplace and environmental hazard surveys to employers
34:5A–7(b) — Completion and distribution of environmental hazardous substance surveys
34:5A–8(a) — Department of Health must provide each employer with a fact sheet for each hazardous substance reported
34:5A–8(b) — Employers exempt from Act
34:5A–9 — DEP must maintain file of environmental surveys; may require employers to update or clarify surveys; surveys will be made available to the public
34:5A–11 — Spanish translation
34:5A–14(c) — Department of Health may certify containers labeled in compliance with any federal act as complying with 34:5A–14
34:5A–14(d) — Substances for which chemical name need not be included on label
34:5A–15 — Trade secret claims
34:5A–17 — Employees may not be discharged or penalized for exercising rights under the Act
34:5A–18 to 20 — Establishment, powers and duties of Right to Know Advisory Council
34:5A–21 — Implementation of Act
34:5A–22 — County health departments must maintain files of workplace and environmental surveys and make them available to the public
34:5A–23 — Civil actions for violations of Act
34:5A–24 — Absence of substance from lists does not affect employer's duty to warn, or take other precautions
34:5A–25 — Role of fire and police departments
34:5A–27 — State law preempts municipal and county ordinances passed after May 11, 1983
34:5A–28 — State agencies will evaluate Act in two years and present report to legislature
34:5A–29 — Agencies may enter employer's facilities to assure compliance
34:5A–30 — Agencies may adopt necessary rules and regulations
34:5A–31 — Remedies for failure to comply

standard. The federal and state lists may comfortably coexist. Thus sections 34:5A–4 and 34:5A–5 are not preempted.

## 2. Employer Completion of Workplace and Environmental Surveys

 Section 34:5A–7(a) requires employers to complete workplace hazard surveys and to provide the completed surveys to the State Department of Health, the County Department of Health, and local fire and police departments. Section 34:5A–7(b) imposes parallel requirements for completion and distribution of environmental hazard surveys. Section 34:5A–7(b) is not preempted, since it requires reporting of environmental hazards to agencies concerned with public health and safety, a matter not governed by OSHA standards. Section 34:5A–7(a) is not preempted in areas of the economy other than the manufacturing sector, so long as no federal standard is in effect in those areas.

Section 34:5A–7(a) is preempted in the manufacturing sector, SIC Codes 20–39. The requirement that workplace surveys be furnished not only to state agencies concerned with the protection of employees, but also to state and local agencies concerned with the protection of the public at large suggests that section 34:5A–7(a) may have a broader purpose than the federal Hazard Communication Standard. Nevertheless any hazardous substance listed as a workplace hazard pursuant to section 34:5A–5(a), and not listed as an environmental hazard pursuant to section 34:5A–4(a), is deemed to be one posing a specific threat to workers. It appears therefore that the primary purpose of section 34:5A–7(a) is the promotion of occupational health and safety through hazard communication. The federal Hazard Communication Standard expressly preempts section 34:5A–7(a) in the manufacturing sector. Because section 34:5A–7(a) may not operate in the manufacturing sector, the provision in section 34:5A–10 directing the Department of Health to maintain a file of workplace surveys is preempted to the same extent. Moreover, the obligation of employers in the manufacturing sector to keep a central file of workplace surveys, imposed in section 34:5A–12, is also preempted. Likewise, section 34:5A–16 is preempted to the extent that it guarantees employees in the manufacturing sector access to workplace surveys and hazardous substance fact sheets for items on the workplace hazardous substance list. Employers in the manufacturing sector must, however, pursuant to section 34:5A–12, keep and make available the environmental surveys required by section 34:5A–7(b). This provision of the Act is not preempted.

## 3. Funding

 Section 34:5A–26 provides that the Right to Know Act will be funded by assessments against all New Jersey employers. The Fragrance Materials Association argues that this indicates that the Act is aimed solely at occupational safety and health, rather than at community health and safety in general, and thus that all provisions of the Act should be preempted by the OSH Act. Br. at 18. That contention is without merit. The Act discloses a broad community health and safety purpose. The funding provision is a logical means for funding the accomplishment of that purpose. It does not interfere with compliance with the OSH Act or impose obstacles to the accomplishment of the OSH Act's purposes.

## 4. Container Labeling

 Section 34:5A–14 requires New Jersey employers to label containers of hazardous substances with the chemical name and Chemical Abstracts Service number. The federal Hazard Communication Standard requires chemical manufacturers and importers to label each container leaving the workplace with the identity of the hazardous chemical, which may be indicated by either a chemical or a common name. 29 C.F.R. § 1910.1200(f), (d). The labeling requirements of the federal Hazard Communication Standard expressly preempt section 34:5A–14 to the extent that they require labeling of workplace hazards in the manufacturing sector. Section 34:5A–14

continues to operate, however, outside SIC Codes 20–39.

The Hazard Communication Standard does not expressly preempt section 34:5A–14 to the extent that it requires that containers of environmental hazardous substances be labeled. Plaintiffs contend that the labeling provisions of the New Jersey Act are impliedly preempted because they are an obstacle to the accomplishment of congressional purpose in the OSH Act. Section 34:5A–14 requires that within two years containers and pipelines be labeled with chemical names and Chemical Abstracts Service Registry numbers of the five predominant substances passing through them. The plaintiffs contend that compliance with these labeling requirements, which are intended to furnish information to firefighters, police officers, and members of the community at large, will, if imposed on employers in the manufacturing sector, stand as an obstacle to the accomplishment of the purposes of the federal Hazard Communication Standard. Their theory, set forth in several affidavits filed in support of their motion for summary judgment, is that the environmental hazard labeling, in conflicting with the labeling required by the federal standard, will lead to confusion of workers. The district court, because it determined that the preempted provisions of the Act were unseverable, did not decide whether the plaintiffs were entitled to a summary judgment that the environmental hazard labeling features of the Right to Know Act were impliedly preempted by the federal Hazard Communication Standard. Our examination of the summary judgment record suggests that there are disputed issues of material fact which preclude a summary judgment for the plaintiffs or the defendants on that issue. If New Jersey's imposition of the environmental hazard labeling requirements in the manufacturing sector, not for the purpose of protecting workers, but in the interest of firefighters, police officers, and the general public, does in fact stand as an obstacle to the accomplishment of the purposes of the federal standard, the New Jersey law must yield. Otherwise it may

operate. On this record we cannot determine that question as a matter of law.

### D. Severability

■ If any provisions of the Right to Know Act are preempted by the OSH Act, we must look to New Jersey law to determine whether the preempted provisions may be severed from the rest, or whether the statute as a whole must fall. *See Watson v. Buck*, 313 U.S. 387, 395–96, 61 S.Ct. 962, 964–65, 85 L.Ed. 1416 (1941) (severability is a question of state law). Under New Jersey law, severability is a question of legislative intent. The New Jersey legislature has spoken with respect to severability of statutes in general terms:

> If any title, subtitle, chapter, article or section of the Revised Statutes, or any provision thereof, shall be declared to be unconstitutional, invalid or inoperative, in whole or in part, by a court of competent jurisdiction, such title, subtitle, chapter, article, section or provision shall, to the extent that it is not unconstitutional, invalid or inoperative, be enforced and effectuated, and no such determination shall be deemed to invalidate or make ineffectual the remaining titles, subtitles, chapters, articles, sections or provisions.

N.J.Stat.Ann. § 1:1–10 (West 1984). Section 1:1–10 creates a presumption of severability, although it does not mandate a holding of severability if that is not in keeping with legislative intent. *Rutgers Chapter of Delta Upsilon Fraternity v. City of New Brunswick*, 129 N.J.L. 238, 245, 28 A.2d 759, 763, (N.J.Sup.Ct.1942), *aff'd*, 130 N.J.L. 216, 32 A.2d 364 (N.J. 1943).

The New Jersey case law on severability focuses on the overriding purpose of the statute to determine whether excising the invalid provision would promote legislative intent. Most of the reported New Jersey cases holding that a challenged provision may not be severed from the whole, do so on the ground that, without the challenged provision, the remaining portions of the statute will no longer further the legislature's intent. An interesting pattern

emerges in these cases: in each, the court struck down an exception to a broader statutory rule, and held that, without the exception, the general rule was contrary to legislative intent. Thus, in *Affiliated Distillers Brands Corp. v. Sills*, 289 A.2d 257, 258–59, 60 N.J. 342, 345 (1972), when the court struck down a grandfather clause that protected about one third of all liquor wholesalers from a statute forbidding them also to engage in distilling, the court held that the grandfather clause could not be severed from the statute. *See also New Jersey Chapter, American Institute of Planners v. New Jersey State Board of Professional Planners*, 227 A.2d 313, 319, 48 N.J. 581, 593 (1967) (statute provides that planners must be licensed, but licensed engineers, surveyors, and architects are exempted from the requirement; held: exemption cannot be severed from statute); *Delta Upsilon*, 28 A.2d at 762–63 (statute exempts property of fraternal organizations from taxation, but specifically excludes college fraternities from the definition; held: exception for college fraternities cannot be severed without frustrating legislative intent to make tax exemption narrow). In each of these cases the court was faced with a choice: it could strike down the statute in its entirety, or it could sever the exception and broaden the statute's reach by enforcing the statute without the exception. In each case the court decided to strike down the entire statute rather than risk imposing a regulation broader than the legislature intended.

In other cases, however, where one aspect of a broad regulatory scheme is struck down, the New Jersey courts are likely to hold that legislative intent is better served by severing the invalid provision, which will result in a slightly less comprehensive regulation, than by striking down the entire statute, which would result in no regulation at all. *See State v. Lanza*, 27 N.J. 516, 527, 143 A.2d 571, 577 (1958) (*dictum*) (portion of statute providing that state will compensate municipalities for tax revenues lost as a result of creation of reservoir, if unconstitutional, is severable from statute authorizing creation of water

supply system), *appeal dismissed*, 358 U.S. 333, 79 S.Ct. 351, 3 L.Ed.2d 350 (1959); *Oxford Consumer Discount Co. v. Stefanelli*, 102 N.J.Super. 549, 561, 246 A.2d 460, 467 (App.Div.1968) (unconstitutional residence requirement of Secondary Mortgage Loan Act is severable from other portions of regulatory scheme), *aff'd as modified on other grounds*, 55 N.J. 489, 262 A.2d 874, *appeal dismissed*, 400 U.S. 808, 91 S.Ct. 45, 27 L.Ed.2d 38, *order amended*, 400 U.S. 923, 91 S.Ct. 183, 27 L.Ed.2d 182 (1970). In such cases, "[w]here the principal object of the statute is constitutional, and the objectionable provision can be excised without substantial impairment of the general purpose, the statute is operative except insofar as it may contravene fundamental law." *State v. Lanza*, 27 N.J. 516, 527, 143 A.2d 571, 577 (N.J.Sup.Ct.1958).

Legislative intent as to severability may also be gleaned from the structure of the statute. In *State v. Lanza*, the court declared that an invalid provision should be deemed severable from a valid one "unless the two are so intimately connected and mutually dependent as reasonably to sustain the hypothesis that the Legislature would not have adopted the one without the other." 143 A.2d at 577. This is largely a question of whether the statute will continue to make sense after the challenged portion is excised. A regulatory statute may be permitted to stand if, "stripped of those provisions which are invalid, [it] remains a comprehensive and cohesive regulatory ordinance with appropriate sanctions for its enforcement." *Oxford Consumer Discount Co. v. Stefanelli*, 246 A.2d at 467 (quoting *Cranberry Lake Quarry Co. v. Johnson*, 95 N.J.Super. 495, 517, 231 A.2d 837, 848 (App.Div.), *cert. denied*, 50 N.J. 300, 234 A.2d 407 (1967)). In sum, the New Jersey courts use a commonsense approach to severability, holding that an invalid provision is severable if that is in keeping with legislative intent; legislative intent is ascertained by looking to the broad purpose of the statute, the degree to which the valid and invalid provisions are intertwined with one anoth-

er, and the extent to which the statute remains comprehensive and logical after the invalid provisions are excised.

The intention of the New Jersey legislature will be best advanced by severing preempted portions of the Right to Know Act and leaving the remainder operative. The legislature's intent to protect all New Jersey residents by informing them of hazardous substances is manifest. *See* N.J. Stat.Ann. § 34:5A–2. Removal of the preempted provisions makes the New Jersey Act somewhat less comprehensive; it does not, however, make any drastic changes that would appear to be contrary to legislative purpose, and it does not broaden the scope of the regulatory scheme by eliminating exceptions to the regulation. The preemptive effect of the OSH Act and the Hazard Communication Standard is narrow. The Right to Know Act remains a "comprehensive and cohesive regulatory ordinance with appropriate sanctions for its enforcement," *Oxford*, 246 A.2d at 467, which should be enforced to further the intent of the New Jersey legislature. The district court erred, therefore, in ruling that as applied to the manufacturing sector the entire Right to Know Act is preempted.

### III.

#### The Trade Secret Contention

■ The district court held that the provisions of the Right to Know Act requiring disclosure of some trade secret information, N.J.Stat.Ann. § 34:5A–5(b), and providing limited protection to other trade secret information, N.J.Stat.Ann. § 34:5A–15, are neither preempted nor do they constitute a taking without due process. Those holdings are consistent with and indeed required by *Ruckelshaus v. Monsanto Co.*, — U.S. —, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984), and *Westinghouse Electric Corp. v. United States Nuclear Regulatory Commission*, 555 F.2d 82, 95 (3d Cir.1977).

### IV.

#### Conclusion

The district court correctly held that the specific sections of the Right to Know Act directed to the identification and disclosure of workplace hazardous substances, as distinct from environmental hazardous substances, are preempted in the manufacturing sector by the federal Hazard Communication Standard. The injunction against the enforcement in the manufacturing sector of section 34:5A–7(a) and the other sections directly related to it must therefore be affirmed. The Right to Know Act is not preempted insofar as it regulates employers outside the manufacturing sector, or insofar as it requires identification and reporting of environmental hazards. The preempted provisions may be severed from those that are valid. Summary judgment on preemption grounds with respect to the operation of the environmental hazard labeling requirements of section 34:5A–14 is not appropriate because there are material fact issues as to their effect on the accomplishment of the purposes of the federal standard. The court properly granted summary judgment on the trade secret claim. The judgment appealed from will therefore be affirmed in part, reversed in part, and the case remanded for proceedings consistent with this opinion.