**ASSOCIATED INDUSTRIES OF MASSACHUSETTS, Plaintiff,**

v.

**James F. SNOW, Commissioner of the Department of Labor and Industries, Defendant.**

**Civ. A. No. 88–2143–T.**

United States District Court, D. Massachusetts.

July 12, 1989.

---

Patrick W. Hanifin and Wayne S. Henderson, New England Legal Foundation, Boston, Mass., for plaintiff.

Despena F. Billings, Asst. Atty. Gen., and James Shannon, Atty. Gen., Boston, Mass., for defendant.

## MEMORANDUM

TAURO, District Judge.

Plaintiff, Associated Industries of Massachusetts ("AIM"), brought this action in an attempt to invalidate a state statute, and the regulations promulgated under its authority, that were designed to regulate asbestos abatement throughout the Commonwealth. This court denied plaintiff's motion for a preliminary injunction at a hearing held March 31, 1989. Both parties have now filed motions for summary judgment.

### I.

Summary judgment may be granted where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Here, there are no material facts in dispute, and the questions presented are of a purely legal nature. Accordingly, summary judgment is appropriate.

### II.

The horrors associated with asbestos have become all too familiar in recent

years. To summarize briefly, asbestos is an indestructible, fibrous material used commonly in building construction. Over time, the asbestos particles deteriorate into a dust or powder that can travel long distances through the air. Once airborne, the particles are extremely dangerous to anyone who may inhale them. The known dangers of asbestos poisoning include severe lung scarring, various forms of lung cancer, and gastrointestinal cancer. *See* Affidavits of Smuts and Christiani. The Occupational Safety and Health Administration ("OSHA") has stated that it is "aware of no instance in which exposure to a toxic substance has more clearly demonstrated detrimental health effects on humans than has asbestos exposure." 51 Fed.Reg. 22615 (1986).

It was in response to these health and safety concerns that the federal government and many state and local governments took action in an attempt to curtail further asbestos-related harm. And it is the interplay between two of these regulatory schemes that provides the basis for the present action.

### III.

Plaintiff's primary contention is that M.G.L. ch. 149, §§ 6A–6F and the corresponding regulations promulgated by the Department of Labor and Industries—453 C.M.R. §§ 6.00–6.17 (the "DLI regulations")—are preempted by certain federal OSHA standards.[1]

■ Whether a state law is preempted by federal law, and thus invalid under the Supremacy Clause of the Constitution, is determined solely by the intent of Congress. That intent may be ascertained in any one of three ways. First, Congress may exhibit its intent to preempt certain state laws in express terms. Second, Congress' intent may be implied where the federal regulatory scheme is so comprehensive so as to leave no room for supplemental regulation by the states. And third, Congress' intent to preempt may also be implied where the execution of the state regulatory scheme actually comes into conflict with the execution of the federal regulatory scheme. *California Savings & Loan Assn. v. Guerra*, 479 U.S. 272, 280–281, 107 S.Ct. 683, 689–90, 93 L.Ed.2d 613 (1987) (plurality opinion) (citing cases).

### IV.

*Express Preemption:*

■ In order to expressly preempt state law, Congress must declare its preemptive purpose on the face of the statute. *See e.g. Jones v. Ruth Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1971). The Occupational Safety and Health Act ("OSH Act") was enacted "to assure so far as possible every working man and woman in the nation safe and healthful working conditions." 29 U.S.C. § 651(b). In accordance with that objective, Congress included an express preemption provision in the OSH Act which states:

Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety and health issue with respect to which no standard is in effect under ... this title [unless the State plan is first submitted to OSHA].

29 U.S.C. § 667 ("§ 18" of the OSH Act). The state regulatory scheme in question here was never submitted to OSHA. Accordingly, the express preemption issue presented here is whether Massachusetts has regulated an "occupational safety and

1. Plaintiff's only other claim is that implementation of the DLI regulations violate M.G.L. ch. 30A, § 5 which provides that "[n]o rule or regulation so filed with the state secretary shall become effective until an estimate of its fiscal effect including that on the public and private sector, for its first and second year, and a projection over the first five-year period, or a statement of no fiscal effect has been filed with said state secretary." Originally, defendant filed only a one line comment saying that "no estimate available on fiscal effect." Since then, however, defendant has filed a fiscal impact statement which fulfills the requirement of M.G.L. ch. 30A, § 5. Although that statement can best be described as casual, fiscal estimates of state agencies must be treated with deference. *See Robinson v. Secretary of Administration*, 12 Mass.App. 441, 425 N.E.2d 772 (1981) ("The agency is to be held to a good faith standard.").

health issue with respect to which" an OSHA standard is already in effect.

Instead of looking at each and every occupational safety and health standard promulgated under the OSH Act, courts which have addressed the identical express preemption question have essentially conceded that OSHA has occupied the field of occupational health and safety. Accordingly, those courts have framed the preemptive effect of § 18 in rather broad terms. *See e.g. New Jersey State Chamber of Commerce v. Hughey*, 774 F.2d 587, 593 (3d Cir.1985). The breadth of those terms, however, has been the subject of a split between the Second and Third Circuits. The First Circuit has not yet added its voice on the issue.

The Third Circuit has held that express preemption of state asbestos regulations by OSHA occurs whenever the "primary purpose" of a state regulation is worker health and safety. *See Manufacturers Assn. of Tri–County v. Knepper*, 801 F.2d 130, 137 (3d Cir.1986). The Second Circuit, however, chose a somewhat less restrictive formulation of OSHA asbestos preemption. It held that:

> [I]n order to avoid preemption the City must demonstrate only that for each of the DEP requirements there is a *legitimate and substantial purpose apart from protecting asbestos workers.* If this is demonstrated, the particular requirement is not a state 'occupational safety and health standard' preempted by § 18.

*Environmental Encapsulating Corp. v. New York City*, 855 F.2d 48, 57 (2d Cir. 1988) (emphasis added).

This court chooses to follow the wisdom of the Second Circuit in this regard. The Supreme Court has recently stated that there is a "presumption that state or local regulation of matters related to health and safety is not invalidated under the Su-

premacy Clause." *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 715, 105 S.Ct. 2371, 2376, 85 L.Ed.2d 714 (1985). With this in mind, this court believes that the somewhat less restrictive approach of the Second Circuit is justified. Accordingly, only the DLI regulations that do not have a "legitimate and substantial purpose apart from protecting asbestos workers" are expressly preempted by OSHA standards. *See also* Note, "The Extent of OSHA Preemption of State Hazard Reporting Requirements," 88 *Colum.L. Rev.* 630, 640 (1988) (authored by John J. Manna, Jr.) ("it [is] unlikely that Congress intended to preempt beyond the workplace.").

V.

*The Challenged Massachusetts Regulatory Scheme:*

The express purpose of the Massachusetts regulatory scheme is for the "protection of the general public and the occupational health and safety of workers engaged in the use, handling, removal or disposal of asbestos or material containing asbestos." M.G.L. ch. 149, § 6C (as amended March 5, 1989).[2] In accordance with this and other enabling language, certain regulations were promulgated by the Department of Labor and Industries, all of which were challenged in this action. The challenged regulations can be broken down into three categories: 1) the Licensure, Certification, and Training Requirements; 2) the Work Practice Requirements; and 3) the Worker Protection Requirements.

1) *453 C.M.R. §§ 6.03–6.14—Licensure, Certification, and Training*

These regulations contain comprehensive guidelines for licensure, certification, and training of various people doing asbestos abatement work (workers, super-

---

**2.** That passage, and corresponding passages in the DLI regulations, were amended to include the "protection of the general public" language well after the statute first went into effect. Plaintiff claims that the amendments were but a smoke-screen to avoid federal preemption. Defendant, however, asserts that the amendments served only to clarify what had always been the intent of the legislature. *See* Affidavit of Kelley ¶ 15. Since this court holds below that the real purposes of the various regulations are evident solely from the wording of the regulations themselves, no weight is given to the absence or existence of certain preliminary language.

visors, consultants, trainers, and inspectors). They also include notification and reporting requirements to keep track of all asbestos work being done in the Commonwealth, in an attempt to facilitate enforcement of the requirements.[3] The focus of these regulations is on public safety—most of the requirements are designed to minimize the agitation and escape of otherwise dormant asbestos particles by ill-trained workers. *See* Affidavit of Martin ¶¶ 1–13; Affidavit of Cooper ¶ 9. Indeed, much of the training curriculum was adopted directly from the federal Environmental Protection Agency's Contractor Accreditation Plan developed in accordance with the Asbestos Emergency Response Act of 1986 ("AHERA") 15 U.S.C. §§ 2641–2654. There is no dispute that this underlying plan was designed to protect the public from environmental dangers. *Compare* 40 C.F.R. § 763, Subpt. E, App. C *with* 453 C.M.R. § 6.92, App. (*referred to in* 453 C.M.R. § 6.09(4)(a)). Accordingly, the DLI Licensure, Certification, and Training regulations have a "legitimate and substantial purpose apart from protecting asbestos workers," and, therefore, are not expressly preempted by OSHA standards.

### 2) *453 C.M.R. § 6.14—Work Practice Requirements*

These regulations require numerous procedures to be carried out during asbestos abatement. The specific requirements are as follows:

A) Work Site Preparation: i) exclusion of nonessential personnel from the work site; ii) posting of warning signs around the work site; iii) shutdown of the building's ventilation system (heating, air conditioning etc.); iv) removal of movable items from the work site; v) covering of all nonmovable items; vi) insulation of the work area by the sealing of windows and doors etc.—creating a "critical barrier;" vii) covering floors and walls; and viii) grounding of electrical cords (to prevent fires);

B) Decontamination: i) setting up decontamination facilities adjacent to the work site with a changing room ("clean room") and a shower; ii) requiring workers to shower and change clothes before leaving the work site; iii) equipment decontamination; iv) containment of contaminated supplies in thick, air-tight "glove bags" as outlined in § 6.14(4); v) maintenance of reduced atmospheric pressure in the work area by use of a special ventilation system (to lower the concentration of airborne particles in case of a leak); and vi) decontamination of air filters;

C) Work Procedures: i) wetting down of the asbestos (to prevent agitation); ii) containerization of accumulated particles (to prevent build-up); iii) encapsulation (spraying with a plastic-like material which hardens the particles to prevent agitation); and iv) replacement of furnaces and boilers covered with asbestos;

D) Clean Up: i) use of certain wet-vacuuming techniques; ii) air monitoring (personal exposure, collection and analysis of air samples); and iii) careful and certain disposal of asbestos particles (crushed into a powder, placed in locked containers, and

---

**3.** It should be noted that there is other language found within the OSHA standards which plaintiff argues alters the correct express preemption formulation with regard to these regulations only. The Hazard Communication Standard found within the Revised Construction Standard states in part that the training regulations of OSHA are "intended to address comprehensively the issue of evaluating the potential hazards of chemicals, and communicating information concerning hazards and appropriate protective measures to employees, and to preempt any legal requirements of a state ... pertaining to the subject." 29 C.F.R. § 1910.1200(a)(2). Plaintiff claims that this, in combination with

§ 18, expressly preempts *all* asbestos training of employees. This court holds, however, that—like § 18—this language applies only to training about *worker* health and safety. *See* Note, "The Preemptive Effect of OSHA's Hazard Communication Standard Outside the Manufacturing Sector," 1985 *B.Y.U.L. Rev.* 815, 821–22 (authored by Toby A. Threet) (§ 18 in combination with the Hazard Communication Standard only expressly preempts state law with respect to the manufacturing sector). Accordingly, the Second Circuit's express preemption formulation applies with the same force to the DLI Licensure, Certification, and Training regulations as it does to all the state asbestos regulations.

transported in covered vehicles).[4]

As is plainly evident by the specifics of the Work Practice Requirements, these regulations too have a "legitimate and substantial" purpose of public safety—all of these requirements will minimize public exposure to asbestos either by minimizing the agitation of dormant particles or by limiting public access to contaminated areas. *See* Affidavit of Martin ¶ 14; Affidavit of Cooper ¶ 8; Affidavit of Kelley ¶ 15.

### 3) *453 C.M.R. § 6.15—Worker Protection Requirements*

■ As their name suggests, these regulations might have trouble surviving the "legitimate, and substantial" standard. They can be broken down into three categories: 1) the use of respirators by workers; 2) the use of protective clothing by workers; and 3) the medical monitoring of workers.

Defendant argues that the medical monitoring of workers is at least partially for the purpose of public health, because it allows for the collection of a statistical data base crucial for the prevention and treatment of asbestos related diseases. Similarly, defendant argues that the use of protective clothing is partially for the purpose of public health, because it prevents workers from wearing asbestos contaminated clothing outside of the workplace. *See* Affidavit of Martin ¶ 15. Even if some weight is given to these assertions, however, the public health concerns they raise are covered by overlapping DLI regulations found within the Work Practice Requirements. *See* 453 C.M.R. §§ 6.14(2)(b) and (e). Moreover, those public health rationales are at best incidental to the true worker protection purposes behind these regulations. As such, there is no "legitimate and substantial purpose apart from protecting asbestos workers" for the protective clothing and medical monitoring requirements.

The remaining Worker Protection regulation requires the use of respirators by asbestos workers. Unlike the previous two, this provision is not covered by any of the other DLI regulations. The only public safety purpose that defendant can put forth for this requirement is that "the use of respirators enables abatement workers to withstand higher concentrations of asbestos in contained areas so that lower levels can be maintained in public areas." Affidavit of Martin ¶ 15. Not only is this somewhat far-fetched, but it is also contradicted by a rationale given by defendant for 453 C.M.R. § 6.14(10)—the use of special on-site ventilators. Defendant claimed that the purpose of that regulation was to *lower* the airborne concentration of asbestos in the work area in case of a leak into public spaces. Consequently, the respirator requirement too has no "legitimate and substantial purpose apart from protecting asbestos workers." As a result, all of the Worker Protection Requirements (453 C.M.R. § 6.15) are preempted by OSHA standards.[5]

### VI.

*Implied Preemption of the Remaining Regulations:*

As stated above, preemption of a state law can be implied in one of two ways. First, a state law, regardless of its legitimate purpose, is impliedly preempted if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). And second, a state law is impliedly preempted if Congress has occupied the relevant field, leaving no room for supplemental regulation. *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 713, 105 S.Ct.

---

**4.** 453 C.M.R. § 6.14(3) lays out similar but less comprehensive work practice requirements for spot repairs.

**5.** The only other regulations challenged by plaintiff are 453 C.M.R. §§ 6.01 and 6.02—the preliminary and definitional regulations, and § 6.16—the enforcement regulation. In so far

as they relate to the regulations not expressly preempted by OSHA standards, they too remain valid. The same is true of M.G.L. ch. 149, §§ 6A–6F—the enabling statute. That too remains valid to the extent that it relates to the remaining regulations.

2371, 2375, 85 L.Ed.2d 714 (1985). Plaintiff only argues the former.[6]

Plaintiff's argument for implied preemption centers around the Licensure, Certification, and Training Requirements.[7] Plaintiff claims that those regulations alter the delicate balance that Congress struck between "protecting the health of workers and preventing the destruction of industries." *Plaintiff's Memorandum in Support of Motion for Summary Judgment* at 21. And as such, the DLI requirements stand as an obstacle to federal enforcement.

There is no question that the Massachusetts Licensure, Certification and Training Requirements are more stringent than those of OSHA. That alone, however, is not enough to impliedly preempt the DLI regulations. The purpose of the OSH Act was not to provide uniform asbestos standards throughout the country. It was to assure minimum standards. *See* S.Rep. No. 1282, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News, 5177, 5194–95 ("The plan must contain assurances that the State will, to the extent possible under its law, establish and maintain an occupational safety and health program applicable to all employees of the State and its political subdivisions, and that such program will be *as effective* as that applicable ...") (emphasis added). *See also Ohio Manufacturers Assoc. v. City of Akron*, 801 F.2d 824, 831 (6th Cir.1986),

*appeal dismissed & cert. denied*, 484 U.S. 801, 108 S.Ct. 44, 98 L.Ed.2d 9 (1987).

Moreover, the training requirements of OSHA deal almost exclusively with informing workers about their own safety. Employers under the OSHA standards are required to use warning signs, labels, and other means to notify workers about recognizing asbestos, the health problems associated with asbestos exposure, the relationship between smoking and asbestos poisoning, the importance of certain work practices in minimizing worker exposure to asbestos, and the existence of medical surveillance requirements for asbestos workers. 29 C.F.R. § 1926.58(k). That sort of health awareness scheme is not frustrated by the third-party training required by the DLI regulations. Consequently, the remaining regulations are not impliedly preempted by OSHA standards.[8]

## VII.

For all the foregoing reasons, only the Worker Protection Requirements (453 C.M.R. § 6.15) are preempted by OSHA standards. The question remains, however, whether these few provisions are severable from the body of regulations challenged in this action.

Severability is a question of state law. *See Watson v. Buck*, 313 U.S. 387, 395–96, 61 S.Ct. 962, 964, 85 L.Ed. 1416 (1941). And in Massachusetts, as in many other states, the intent of the lawmakers is controlling. *See Del Duca v. Town Ad-*

---

6. Part of the reason that plaintiff makes no claim that the remaining regulations are impliedly preempted because Congress occupied the field, might very well be that Congress itself seems to disagree with the argument. At least with regard to the Licensure, Certification, and Training Requirements, Congress has demonstrated its belief that there *is* room for supplemental regulation by its subsequent passage of AHERA—a statute requiring training and accreditation of individuals working with asbestos in school buildings. *See Environmental Encapsulating*, 855 F.2d at 58–59 ("If Congress believed that OSHA had occupied the entire field of employee training, there would have been little reason to enact AHERA without at least acknowledging its view.").

7. Plaintiff also mentions the Worker Protection Requirements, but since those regulations have

already been expressly preempted, this court need not consider them with regard to implied preemption.

8. Plaintiff also argues that because OSHA considered and rejected a proposal for a "more elaborate employee certification program" (51 Fed.Reg. 22725 (1986)), that should impliedly preempt any state certification plan. According to the Second Circuit, however, "[t]he omission from the Construction Standard of an asbestos certification program provides as much support for the argument that OSHA intended to leave such programs to the discretion of local government, as for plaintiff's contrary contention that OSHA intended to preclude local governments from adopting such educational programs." *Environmental Encapsulating*, 855 F.2d at 59.

*ministrator of Methuen*, 368 Mass. 1, 329 N.E.2d 748 (1975). In this case, 453 C.M.R. § 6.17 specifically provides that "[i]f any provision of 453 C.M.R. 6.00 shall be held inconsistent with the laws of the Commonwealth, or held unconstitutional, either on its face or as applied, the inconsistency or unconstitutionality shall not effect the remaining provisions." That provision leaves little doubt as to the intent of the lawmakers. Accordingly, 453 C.M.R. § 6.15 is severed from the DLI regulations as violative of the Supremacy Clause of the United States Constitution.

Consequently, partial summary judgment is granted for defendant with respect to M.G.L. ch. 149, §§ 6A–6F and all the challenged regulations except 453 C.M.R. § 6.15. Partial summary judgment is granted for plaintiff with respect to 453 C.M.R. § 6.15.

An order will issue.