NEW JERSEY CHAMBER OF COMMERCE, Chemical Industry Council of New Jersey, New Jersey Business and Industry Association, Chemical Specialties Manufacturers Association, Inc., Merck & Co., Inc., Magnesium Elektron, Inc., CP Chemicals Inc., Chem–Mark, Inc., Exxon Chemicals Americas, a division of Exxon Corporation, Schering Corporation, Essex Chemical Corporation and Ingersoll–Rand Company, and Shell Chemical Company, a division of Shell Oil Company

v.

Robert E. HUGHEY, Commissioner of Environmental Protection; J. Richard Goldstein, M.D., Commissioner of Health and William Van Note, Acting Commissioner of Labor and The State of New Jersey, Appellees in No. 88–5283.

Appeal of NEW JERSEY STATE CHAMBER OF COMMERCE, Chemical Industry Council of New Jersey; New Jersey Business and Industry Association; Chemical Specialties Manufacturers Association, Inc.; Merck & Co., Inc.; Magnesium Elektron, Inc., Exxon Chemical Americas, a division of Exxon Corporations; Ingersoll–Rand Company; and Shell Chemical Company, a division of Shell Oil Company, Appellants in No. 88–5283.

FRAGRANCE MATERIALS ASSOCIATION OF the UNITED STATES, Flavor and Extract Manufacture's Association, Bush Boake Allen, Inc., Fragoco, Inc., Firmenich, Inc., International Flavors and Fragrances, Inc., Isogenics, Inc., H.J. Kohnstamm & Co., Inc., V. Mane Fils, Inc., Noville Essential Oil Company, Inc., Polarome Manufacturing Corp., Roure Bertrand Dupont, Inc., Takasago USA Inc., Ungerer & Co., and Universal Fragrance Corporation, Appellants in No. 88–5332,

v.

William VAN NOTE, Acting Commissioner of Labor for the State of New Jersey; J. Richard Goldstein, Commissioner of Health for the State of New Jersey; Robert E. Hughey, Commissioner of Environmental Protection for the State of New Jersey, Appellees in No. 88–5332,

and

Joseph H. Rodriguez, Public Advocate of the State of New Jersey; New Jersey State Industrial Union Council, AFL–CIO (IUC); Citizen Action of New Jersey; Philadelphia Area Project on Occupational Safety & Health (PHILA-POSH); New Jersey Environmental Lobby; New Jersey State Firemen's Mutual Benevolent Association (FMBA); International Association of Firefighters, New Jersey AFL–CIO (IAFF); Communication Workers of America, & Glass Workers International Union, AFL–CIO, Local 514–G; Pennsylvania Federation Brotherhood of Maintenance of Way Employees, AFL–CIO; Coalition Against Toxics; League of Conservation Voters (New Jersey); Student Public Interest Research Group of New Jersey (N.J. PIRG); Environmental Action (Washington, D.C.); League of Women Voters of New Jersey; Sierra Club (New Jersey); American Lung Association of New Jersey; New Jersey Tenants Organization (NJTO); New Jersey Association of County Health Officers; and New Jersey Health Officers Association, Defendants–Intervenors in No. 88–5332.

Nos. 88–5283, 88–5332.

United States Court of Appeals, Third Circuit.

Argued July 25, 1988.

Decided Feb. 28, 1989.

Rehearing and Rehearing In Banc Denied April 7, 1989.

John J. Carlin, Jr. (argued), Martin Cronin, Florham Park, N.J., for appellants in No. 88–5283.

Alfred A. Slocum, Public Advocate of New Jersey, Richard E. Shapiro (argued), Jose L. Fernandez, W. Cary Edwards, Atty. Gen. of New Jersey, Michael S. Bokar (argued), Sr. Deputy Atty. Gen., Trenton, N.J., Jerome Balter, Public Interest Law Center of Philadelphia, Philadelphia, Pa., Sidney Reitman, Bennett D. Zurofsky, Reitman, Parsonnet, Maisel & Duggan, Newark, N.J., for appellees in Nos. 88–5283 and 88–5332.

John P. McKenna (argued), Daniel F. Shea, McKenna, Shea & Crisman, Washington, D.C., Daniel R. Thompson, Washington, D.C., for appellants in No. 88–5332.

Before HIGGINBOTHAM, BECKER and GREENBERG, Circuit Judges

## OPINION OF THE COURT

BECKER, Circuit Judge.

This appeal presents the question whether the container labeling provisions of the New Jersey Worker and Community Right to Know Act, N.J. Stat.Ann. § 34:5A–14 (West 1988) ("Right to Know Act") are preempted by the Occupational Safety and Health Act of 1970, Pub.L. No. 91–596, 84 Stat. 1590 (1970) (codified at 29 U.S.C. §§ 651–678 (1982 & Supp. IV 1986) ("OSH Act") and the Hazard Communication Standard, 29 C.F.R. § 1910.1200 (1988), promulgated by the Occupational Safety and Health Administration ("OSHA") thereunder. Plaintiff-appellants New Jersey State Chamber of Commerce and Fragrance Materials Association, contending that the broad container labeling provisions of the Right to Know Act are preempted by the OSH Act and the federal standard, sought declaratory and injunctive relief in the district court. Named as defendants were various New Jersey officials charged with implementing the Right to Know Act.

In *New Jersey State Chamber of Commerce v. Hughey*, 774 F.2d 587 (3d Cir. 1985) ("*Hughey I*"), we held that a part of these container labeling provisions, i.e. that part relating to the labeling of workplace hazards in the manufacturing sector, was expressly preempted by the OSH Act. However, we also remanded the case to the district court to determine whether the container labeling provisions, to the extent that they were not expressly preempted, were nevertheless impliedly preempted because, due to the confusion allegedly engendered by the existence of multiple labeling systems, they "in fact stand as an obstacle to the accomplishment of the purposes of the federal standard." 774 F.2d at 596. After a trial at which the parties presented evidence on this issue, the district court found that the New Jersey Act was not an obstacle to the accomplishment of the purposes of the federal standard and consequently held that the Act was not impliedly preempted by the OSH Act or OSHA's regulations. We stayed this judgment pending plaintiffs' appeal.

The Right to Know Act has separate provisions requiring the labeling of containers that contain hazardous chemicals (section 14(a)) and containers that contain any chemicals (section 14(b)). The latter provision is the so-called universal labeling provision. *See* N.J.Stat.Ann. § 34:5A–14. Plaintiffs present both express and implied preemption arguments. With respect to express preemption, plaintiffs argue, in the alternative, that (1) *Hughey I* held that the so-called universal container labeling provision of the New Jersey Act is expressly preempted by the federal standard; (2) *Hughey I* did not reach the question whether this provision of the New Jersey Act was expressly preempted and that we should so hold; or (3) *Hughey I* held that this provision was not expressly preempted but we should reexamine that holding because of subsequent amendments to the OSHA Hazard Communication Standard. The amendments to OSHA's regulations, however, were minimal, and plaintiffs' argument that this panel is free to reexamine *Hughey I*'s holding is frivolous. Moreover, we read *Hughey I* as holding that the universal labeling provision was not expressly preempted.

With respect to implied preemption, plaintiffs contend that the district court erred in its finding that the Right to Know Act would not stand as an obstacle to the accomplishment of the purposes of the federal standard. However, we do not think the finding of the district court clearly erroneous. We therefore affirm.

## I. THE ALLEGEDLY CONFLICTING STATUTES

### A. The New Jersey Right to Know Act (Section 14)

Section 14 of the New Jersey Right to Know Act, N.J.Stat.Ann. § 34:5A–14, requires employers to label certain chemical containers.[1] Section 14(a) provides that "[e]very employer shall have until October 30, 1985" to label containers "containing a hazardous substance." A "hazardous substance" is defined as any substance on the

---

1. The relevant text of section 14 reads as follows:

a. Every employer shall have until October 30, 1985 to take any action necessary to assure that every container at his facility containing a hazardous substance shall bear a label indicating the chemical name and Chemical Abstracts Service number of the hazardous substance or the trade secret registry number assigned to the hazardous substance.... Employers shall be required to label pipelines only at the valve or valves located at the point at which a hazardous substance enters a facility's pipeline system, and at normally operated valves, outlets, vents, drains and sample connections designed to allow the release of a hazardous substance from the pipeline.

b. Within two years of the effective date of this act, every employer shall take any action necessary to assure that every container at his facility bears a label indicating the chemical name and Chemical Abstracts Service number of the substance in the container, except as provided in subsection d. of this section, or the trade secret registry number assigned to the substance.... If a container contains a mixture, an employer shall be required to insure that the label identify the chemical names and Chemical Abstracts Service numbers, except as provided in subsection d. of this section, or the trade secret registry numbers, of the five most predominant substances contained in the mixture. The provisions of this subsection shall not apply to any sub-

stance constituting less than 1% of a mixture unless the substance is present at the facility in an aggregate amount of 500 pounds or more. Employers shall be required to label pipelines only at the valve or valves located at the point at which a substance enters a facility's pipeline system, and at normally operated valves, outlets, vents, drains and sample connections designed to allow the release of a substance from the pipeline.... These standards shall be consistent with the intent of this subsection to provide for the labeling of every container which may contain a substance which is potentially hazardous.

c. ... The Department of Health may, by rule and regulation, certify containers labeled pursuant to any ... federal act as labeled in compliance with the provisions of this section.

d. One year after the effective date of this act the Department of Health shall adopt ... a list of substances the containers of which may be labeled with the common names and Chemical Abstracts Service numbers of their contents. The department shall include on the list adopted pursuant to this subsection only substances which are widely recognized by their common names. An employer shall provide the chemical name of a substance in a container labeled pursuant to this subsection within five working days of the request therefor.

New Jersey Department of Health's "workplace hazardous substance list," which consists of (1) "[a]ny substance ... regulated by" OSHA under 29 C.F.R. part 1910, subpart z; (2) "[a]ny environmental hazardous substance"; and (3) "[a]ny other substance which the [D]epartment [of Health] ... determines poses a threat to the health or safety of an employee." N.J.Stat.Ann. §§ 34:5A–3(m), 34:5A–5(a). An "environmental hazardous substance" is defined as any substance on the New Jersey Department of Environmental Protection's "environmental hazardous substance list," which consists of substances which, when "used, manufactured, stored, packaged, ... disposed of or released into the environment of [New Jersey], ... may be linked to the incidence of cancer; genetic mutations; physiological malfunctions ... and other diseases; or which ... may pose a threat to the public health and safety." N.J.Stat. Ann. §§ 34:5A–3(i), 34:5A–3(j), 34:5A–4(a).

Section 14(a) thus requires hazardous substance labeling with respect to both environmental hazardous substances and workplace hazardous substances that are not environmental hazardous substances. Section 14(a) requires the label to include the "chemical name and Chemical Abstracts Service number of the hazardous substance or the trade secret registry number assigned to the hazardous substance." [2]

Section 14(b) is considerably broader than section 14(a) with respect to the containers to which it applies. Section 14(b) requires that by August 29, 1986 (two years after the effective date of the Act), every employer shall label "every container at his facility" unless the container falls into one of a number of statutory exclusions. Exclusions aside, the universal labeling requirements of section 14(b) apply to all chemicals, whether hazardous or non-

hazardous. If a container contains a mixture of chemicals, an employer must ensure that the label identifies the chemical names and Chemical Abstracts Service numbers or the trade secret registry numbers of the "five most predominant substances contained in the mixture," although the presence of a chemical need not be recorded on the label if it constitutes "less than 1% of a mixture unless the substance is present at the facility in an aggregate amount of 500 pounds or more." Section 14(b)'s label content requirements for each chemical are essentially identical to section 14(a)'s requirements; the only difference is that under section 14(b) employers may substitute the common name for the chemical name with respect to those substances that the Department of Health has determined "are widely recognized by their common names." N.J.Stat.Ann. § 34:5A–14(d).

### B. The OSH Act and the OSHA Regulations

Section 6(b)(7) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 655(b)(7), and its implementing regulations, 29 C.F.R. § 1910.1200, require that employers provide information to their employees concerning hazardous chemicals. Chemical manufacturers are required to develop a material safety data sheet that contains detailed information about each hazardous chemical they produce. Employers using these hazardous chemicals receive the material safety data sheets from the manufacturers and must ensure that they are readily accessible to employees. 29 C.F.R. § 1910.1200(g). Employers must train their employees to detect the presence or release of a hazardous chemical in the work area, inform them of the physical and health hazards of work area chemicals, and train them in the measures necessary to

---

**2.** "Chemical name" is defined as "the scientific designation of a chemical in accordance with the nomenclature system developed by the International Union of Pure and Applied Chemistry or the Chemical Abstracts Service rules of nomenclature." N.J.Stat.Ann. § 34:5A–3(b). "Chemical Abstracts Service number" is defined as "the unique identification number assigned by the Chemical Abstracts Service to chemicals." N.J.Stat.Ann. § 34:5A–3(a). The "trade secret

registry number" is "a code number ... assigned to the identity of a substance in a container by the [New Jersey] Department of Health"; the chemical name and Chemical Abstracts Service number of a substance may be considered a trade secret "only if the employer can establish that the substance is unknown to competitors." N.J.Stat.Ann. §§ 34:5A–3(v), 34:5A–3(u).

protect themselves from these chemical hazards. *Id.* § 1910.1200(h).

Employers must also label containers of hazardous chemicals with the identity of the hazardous chemicals and appropriate hazard warnings. *Id.* § 1910.1200(f). "Identity" is defined as "any chemical or common name" indicated on the material safety data sheet for the chemical. *Id.* § 1910.1200(c). "Hazardous chemical" is defined as any chemical that is a physical hazard or a health hazard. *Id.* Chemical manufacturers must evaluate the hazards of the chemicals they produce and must treat as hazardous chemicals regulated by 29 C.F.R. part 1910, subpart z. *Id.* § 1910.1200(d). While the federal hazard communication standard originally applied only to the manufacturing sector, *see* Hazard Communication, 48 Fed.Reg. 53,280 (1983) (final rule), OSHA has subsequently amended the federal standard so that it covers the nonmanufacturing sector as well. *See* Hazard Communication, 52 Fed. Reg. 31,852 (1987) (final rule); *Associated Builders & Contractors, Inc. v. Brock*, 862 F.2d 63 (3d Cir.1988) (upholding final rule).

## C. Schematic Differences with Respect to Container Labeling

Although there are numerous similarities, the federal scheme differs from New Jersey's scheme with respect to container labeling in three relevant respects. New Jersey requires all chemical containers to be labeled; OSHA requires only containers containing hazardous chemicals to be labeled. New Jersey requires that the five most predominant substances contained in a mixture must be labeled; OSHA has no such requirement. New Jersey requires most labels to include the chemical name and Chemical Abstracts Service number; with respect to chemical identity, OSHA requires only the chemical or common name. OSHA defines chemical or common name in such a way that employers complying with the federal standard might not be in compliance with New Jersey's standard.[3]

## II. EXPRESS PREEMPTION

### A. Effect of the Amendment of the Hazard Communication Standard

Plaintiffs argue that we are not bound by *Hughey I* because OSHA subsequently amended the language of its preemption regulation in Hazard Communication, 52 Fed.Reg. at 31,860–61. *Compare* 29 C.F. R. § 1910.1200(a)(2) (1988) ("Under section 18 of the Act, no state or political subdivision of a state may adopt ... any requirement *relating* to the issue addressed by this Federal standard....") (emphasis added) *with* 29 C.F.R. § 1910.1200(a)(2) (1984) ("This occupational safety and health standard is intended ... to preempt any state law *pertaining* to this subject.") (emphasis added). The first flaw in appellant's argument is that the language "relating to" does not sweep much more broadly, if at all, than "pertaining to." Second, OSHA's release cites *Hughey I* without criticizing it and states that the purpose of the new language is to ensure that "local laws" as well as state laws "*pertaining* to occupational hazard communication are preempted by the Federal standard." 52 Fed.Reg. at 31,860 (emphasis added). Thus the release not only uses the language of the old standard but also states that the purpose of the change was not to substitute "relating to" for "pertaining to" but to ensure that the express preemption provision of the regulation reached local as well as state laws. Third, *Hughey I* does not rely upon the "pertaining to" language of the old regulation but instead interprets the "relating to" language of section 18(b) of the OSH Act, *Hughey I*, 774 F.2d at 592. We therefore conclude that OSHA's subsequent amendments to the federal standard have no effect on our obligation to follow *Hughey I.*

### B. Does Hughey I *Foreclose De Novo Assessment of the Express Preemption Issue?*

Section 18(b) of the OSH Act, 29 U.S.C. § 667(b), expressly preempts state occupa-

---

**3.** New Jersey requires the Chemical Abstracts Service ("CAS") number to be included on every chemical container. N.J.Stat.Ann. §§ 34:5A-14(b), 14(d). The federal standard contains no such requirement, although CAS numbers may be used to identify containers. *See* 29 C.F.R. § 1910.1200(c) (defining "chemical name" and "common name").

tional safety and health standards "relating to any occupational safety or health issue with respect to which a [f]ederal standard has been promulgated" under 29 U.S.C. § 655. The only state standards excluded from the reach of this express preemption provision are those which, unlike the New Jersey Right to Know Act, have been approved by the Secretary of Labor. 29 U.S.C. § 667(c).

The parties dispute the extent to which the New Jersey Act "relat[es]" to the occupational safety or health issues regulated by OSHA's federal standard. Defendants concede the obvious areas of overlap between the state and federal requirements regarding container labeling. They argue, however, that the New Jersey statute has a purpose and scope that is broader than worker protection, since the labeling also furnishes information to firefighters, police officers, and members of the community at large who may be endangered by the chemicals.

The threshold issue is the extent to which *Hughey I* forecloses an independent assessment of these express preemption questions. *Hughey I* construed section 18(a) as expressly preempting a state law only "insofar as the [law] pertains to protection of employee health and safety," and "only to the extent that a federal standard regulating the same issue is already in effect." 774 F.2d at 593. *Hughey I* examined each section of the New Jersey Act to determine the extent to which the section pertains to employee health and safety and the extent to which the section instead "regulate[s] other concerns." *Id.* Where the court found that a section pertains to employee health and safety in some respect, the court held that section 18(a) of the OSH Act preempted the section to that extent. The overarching principle is therefore that a provision of the New Jersey Act is preempted only to the extent that the provision has as its "primary purpose ... the promotion of occupational health and safety...." 774 F.2d at 595. *See also*

*Manufacturers Association of Tri–County v. Knepper,* 801 F.2d 130, 138 (3d Cir. 1986) (applying *Hughey I*'s methodology to the Pennsylvania Worker and Community Right–to–Know Act), *cert. denied,* —— U.S. ——, 108 S.Ct. 66, 98 L.Ed.2d 30 (1987).[4]

*Hughey I* dealt with the New Jersey Act's container labeling provision as follows (numbering added):

[1] The labeling requirements of the federal Hazard Communication Standard expressly preempt section 34:5A–14 to the extent that they require labeling of workplace hazards in the manufacturing sector. [2] Section 34:5A–14 continues to operate, however, outside ... [the manufacturing sector].

[3] The Hazard Communication Standard does not expressly preempt section 34:5A–14 to the extent that it requires that containers of environmental hazardous substances be labeled. [4] Plaintiffs contend that the labeling provisions of the New Jersey Act are impliedly preempted because they are an obstacle to the accomplishment of congressional purpose in the OSH Act. [5] Section 34:5A–14 requires that within two years containers and pipelines be labeled with chemical names and Chemical Abstracts Service Registry numbers of the five predominant substances passing through them. [6] The plaintiffs contend that compliance with these labeling requirements, which are intended to furnish information to firefighters, police officers, and members of the community at large, will, if imposed on employers in the manufacturing sector, stand as an obstacle to the accomplishment of the purposes of the federal Hazard Communication Standard.... [7] The district court, because it determined that the preempted provisions of the Act were unseverable, did not decide whether the plaintiffs were entitled to a summary judgment that the environmental hazard labelling features of the Right to Know Act were impliedly

---

**4.** Regarding the problem of the severability of the preempted provisions of the New Jersey Act, *Hughey I* held that "[t]he intention of the New Jersey legislature will be best advanced by sev-

ering preempted portions of the Right to Know Act and leaving the remainder operative." *Id.* at 598.

preempted by the federal ... [s]tandard. [8] Our examination of the summary judgment record suggests that there are disputed issues of material fact which preclude a summary judgment for the plaintiffs or the defendants on that issue. *Id.* at 595–96.[5] The quoted passage is somewhat opaque upon first reading, as it does not expressly distinguish between section 14(a), regarding labeling of containers containing a hazardous substance, and section 14(b), the universal labeling provision. The passage does, however, evince a clear holding.

The best place to start is the fifth sentence. The Court there states that "Section 34:5A–14 requires that within two years containers and pipelines be labeled with chemical names and Chemical Abstracts Service Registry numbers of the five predominant substances passing through them." This sentence must refer to section 14(b), as the sentence does not limit the labeling requirement to hazardous substances, and only section 14(b) contains the five-predominant-substances requirement. The sixth sentence of the passage states that "[t]he plaintiffs contend that compliance with these labeling requirements, which are intended to furnish information to firefighters, police officers, and members of the community at large, will, if imposed on employers ... stand as an obstacle to ... the federal ... [s]tandard." In light of our understanding of sentence five, we must conclude that the reference to "these labeling requirements" refers to the labeling requirements of section 14(b), the universal labeling requirement.

To recapitulate: given this analysis, the Court in the sixth sentence must be deemed to have held that the requirements of section 14(b) "are intended to furnish information to firefighters, police officers, and members of the community at large." Under *Hughey I*'s "primary purpose" methodology, section 14(b) is thus addressed to a concern other than occupational health and safety and is therefore not expressly preempted by section 18(a) of the OSH Act. Rather, *Hughey I* holds that section 14(b) is preempted, in the words of the sixth sentence, only if it "stand[s] as an obstacle to the accomplishment of the purposes of the federal ... [s]tandard." The Court remanded this implied preemption question to the district court.

We do not deny the force of plaintiffs' contention that another reasonable reading of section 14(b) could conclude that it was intended to furnish information both to workers and nonworkers, especially since the second and third sentences of section 14(b) ensure "employee" access to certain information. If *Hughey I* had expressly acknowledged the dual purpose of section 14(b), it would then have had to determine whether a provision with such a dual purpose "relat[ed]" to any occupational safety or health issue with respect to which a [f]ederal standard has been promulgated," OSH Act section 18(b), 29 U.S.C. § 667(b), and set forth an explicit rationale as to why. While appellants may take such arguments to a higher court, we are not free to consider them, as *Hughey I* is a binding precedent of this court which a subsequent panel may not overrule. U.S. Court of Appeals for the Third Circuit Int. Op. P. 8(C).

In construing *Hughey I*, plaintiffs place great weight on the first sentence of the quoted passage, which states that "[t]he labeling requirements of the federal Hazard Communication Standard expressly preempt section 34:5A–14 to the extent that they require labeling of workplace hazards in the manufacturing sector." We do not read this sentence as speaking, however, to whether section 14(b), the universal labeling provision, is preempted. Since the universal labeling provision is "intended to furnish information to firefighters, police officers, and members of the community at large," the *Hughey I* court could not have meant to exempt containers containing workplace hazards from the universal la-

---

5. *Hughey I* limited the scope of its express preemption holdings to the New Jersey Act's application to the manufacturing sector, as OSHA had not yet extended the federal hazard communication standard to the nonmanufacturing sec-

tor. With respect to the nonmanufacturing sector, the New Jersey Act did not regulate an "issue[ ] that ... [was] federally regulated." *Hughey I,* 774 F.2d at 593.

beling requirement. If the New Jersey legislature has deemed it necessary that firefighters be informed of whether a container contains a harmless substance such as water, the firefighter must also need to know whether a container contains a chemical sufficiently hazardous that it is considered a workplace hazard.

*Hughey I* did hold that part of section 14(a) was expressly preempted. The first sentence (section 14 expressly preempted "to the extent that [i]t[ ] require[s] labeling of workplace hazards") and the third sentence (section 14 not expressly preempted "to the extent that it requires that containers of environmental hazardous substances be labeled") refer to labeling requirements concerning hazardous substances and hence pertain to section 14(a). Read together, these sentences state that section 14(a) is expressly preempted to the extent that it requires the labeling of workplace hazards that are not also environmental hazards. This holding comports with *Hughey I*'s methodology, as it would be difficult to argue that a labeling requirement concerning workplace hazards that were not also environmental hazards related to anything other than the concerns addressed by the federal standard.

*Hughey I* thus held that section 18(a) of the OSH Act expressly preempted section 14 of the New Jersey Act only to the extent that section 14(a) required the labeling of workplace hazards that were not also environmental hazards.[6] We turn to plaintiffs' argument that the overlapping state and federal regulation of workplace hazards will interfere with OSHA's regulatory scheme, a matter of implied rather than express preemption.

### III. IMPLIED PREEMPTION

#### A. *The District Court's Findings of Fact*

The container labeling provisions of the New Jersey Act are impliedly preempted

by the federal standard if they "in fact stand as an obstacle to the accomplishment of the purposes of the federal standard." *Hughey I*, 774 F.2d at 596. After evaluating the expert testimony presented by both plaintiffs and defendants, the district court held "the OSH Act and OSHA's Hazard Communication Standard do[ ] not impliedly preempt the N.J. Act's environmental and universal labeling requirements." Dist.Ct.Op. at 31 (Feb. 5, 1988). This legal conclusion concludes a careful and thorough opinion that succinctly summarizes the testimony of each of the expert witnesses.

In the factual findings section of its opinion, the district court evaluates the credibility of the expert testimony and concludes that "all of the witnesses were truthful and I accept as true all the facts to which they testified. Needless to say the opinions of the parties' witnesses about the ultimate factual conclusions to be drawn were in conflict and I must determine which were the more persuasive." Dist.Ct.Op. at 28. The district court then restates plaintiffs' argument that the New Jersey labeling requirement stands as an obstacle to the accomplishment of the purposes of the OSHA standard:

> Plaintiffs' basic thesis ... is that serious worker confusion will result from the dual labeling system. The confusion will arise, plaintiffs contend, from such things as: (i) the very existence of two labeling systems and the inability of workers to determine which one pertains to worker hazards; (ii) the multiplicity of labels, tending to overwhelm the OSHA hazard labels; (iii) the labeling of hazardous components of mixtures on containers which do not require an OSHA hazard label; (iv) the labeling of a non-hazardous component of a mixture which is

---

6. *Hughey I* limited the reach of its express preemption holding to the New Jersey Act's application to the manufacturing sector, as OSHA had not yet extended the federal standard to the nonmanufacturing sector. *See supra* n. 5. Since the federal standard has now been extended to the nonmanufacturing sector, one might argue that *Hughey I*'s express preemption hold-

ing should also be extended to the nonmanufacturing sector. Plaintiffs, however, did not raise this issue in the district court, so we do not reach the issue whether nonmanufacturers need comply with section 14(a) to the extent that it requires the labeling of workplace hazards that are not also environmental hazards.

in fact hazardous and must carry an OSHA hazard label; and (v) the existence of different numbering systems which will make it difficult for a worker to find the appropriate [OSHA material safety data sheets].

Dist.Ct.Op. at 29. The district court then sets forth its factual conclusion:

> While unquestionably it would be possible to cause worker confusion through inappropriate label formatting and positioning and through inadequate worker training, I conclude that this is most unlikely to occur and that the OSHA labeling requirements can co-exist with the Section 14(a) and (b) labeling requirements of the N.J. Act without serious risk of one system obstructing or interfering with the other.

*Id.*

With respect to worker training, the district court reasoned that (1) "OSHA ... cannot have contemplated that the OSHA hazard label would be the only label on ... containers[, because] the testimony established conclusively that without regard to New Jersey's labeling requirements, ... containers typically contain a multitude of labels which include such things as the chemical names, C[hemical ]A[bstract ]S[ervice] numbers, the manufacturer's product or inventory number, safety instructions, instructions about disposing of containers"; (2) "OSHA training would require that workers be instructed how to identify the OSHA hazard label amidst all the other labels"; and therefore (3) "[t]he addition of the material required by the N.J. Act would not change the situation materially." *Id.* at 30. With respect to formatting and positioning, the district court reasoned that (1) "[t]he OSHA label can be distinguished from all other labels by proper formatting and positioning"; (2) "it is in the manufacturer's interests to alert his workers to potential hazards"; (3) "proper formatting and positioning ... are within the contemplation of the OSHA system"; and therefore (4) "there is no reason to believe that proper and effective formatting and positioning will not be the rule." *Id.* The district court thus concluded that "[f]ormatting and positioning and training, all of

which are within the contemplation of the OSHA system, will ensure that implementation of New Jersey's environmental and universal labeling requirements will not stand as an obstacle to the accomplishment of the purposes of the federal standard." Dist.Ct.Op. at 30–31.

### B. Scope of Review

We may not set aside the district court's factual finding that the New Jersey Act would not stand as an obstacle to the accomplishment of the purposes of the federal standard unless that finding is clearly erroneous. Fed.R.Civ.P. 52(a); *see Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 720–21, 105 S.Ct. 2371, 2378–79, 85 L.Ed.2d 714 (1985) (applying Rule 52(a) in the preemption context). With respect to the district court's legal conclusion that the OSHA standard does not preempt the New Jersey Act, we exercise plenary review. *See Shultz v. Wheaton Glass Co.,* 421 F.2d 259, 267 (3d Cir.1970).

The Supreme Court has summarized the clearly erroneous standard of Rule 52(a) as follows:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. This is so even when the district court's findings do not rest on credibility determinations....

*Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (citations and paragraphing omitted).

### C. Discussion

The district court heard conflicting expert testimony as to whether the New Jersey Act would stand as an obstacle to the accomplishment of the purposes of the federal standard. The plaintiffs presented a number of highly qualified experts who

opined that workers would either be confused by the additional information required by the New Jersey Act or would be overwhelmed with so much information that they would ignore the OSHA labels. The defendants presented a number of highly qualified experts who testified that workers would neither be confused nor overwhelmed by the addition of the New Jersey labels and that proper worker training and label formatting would take care of any such problems. The district court found that the arguments presented by the defendants' experts were more convincing. We do not think that the district court's finding was clearly erroneous.

The Chamber of Commerce argues that "[t]he fact that confusion can be prevented or eliminated by a modification of the OSHA labeling format and training program presents an impermissible intrusion into the federally mandated program." Brief at 39. We disagree. This argument rests upon an assumption that the federal standard contemplates a fixed rather than flexible level of training and labeling format and that any development which necessitates a change from that fixed level or format therefore constitutes an "intrusion." This assumption is unfounded, as the training and formatting requirements of the federal standard are phrased in flexible terms so as to remain effective despite the multiplicity of circumstances that naturally arise in our nation's factories, refineries, construction sites, offices, and other workplaces.[7]

The federal standard requires that "[e]mployers ... ensure that employees are provided with information and training ... to the extent necessary to protect them in the event of a spill or leak of a hazardous chemical from a sealed container." 29 C.F.R. § 1910.1200(b)(4)(iii). The standard's training requirements are undeniably general, see 29 C.F.R. § 1910.1200(h)(2) (requiring employee training in observation, hazards, and employer's protection program), as are the labeling requirements, which may reasonably be construed to require that the hazard information be presented in such a way as to prevent unnecessary worker confusion between the OSHA label and the many other labels that the district court found were present on chemical containers.[8] According to the defendants' expert testimony, adopted as a finding by the district court, workers given proper training would not be confused by the New Jersey labels if employers took such easy-to-implement steps as boxing off the New Jersey information or providing headings to inform the reader whether the information under the headings was required by the federal standard or New Jersey law. This finding is certainly supported by the record.

Plaintiff Fragrance Materials also tries to escape from clearly erroneous review by arguing that "[w]hen a state seeks to require something that a federal agency has decided should not be required, and thereby alters the balance struck by the federal agency, the state law 'conflicts' with the federal as a matter of law." Brief at 30. Although not labeled as such, this argument is a species of the "occupied the field" preemption argument and is foreclosed by our previous opinion in *Hughey I.* If any state law that mandated additional labeling beyond that required by the federal

---

7. Indeed, plaintiff's argument leads to a *reductio ad absurdum.* If one were to categorize the OSHA training requirements as fixed rather than flexible, New Jersey would "intrude" upon the OSHA training were it to repeal the Right to Know Act after it went into effect, as the OSHA training that workers receive would naturally be altered because there would no longer be a need to train workers to focus on the OSHA rather than New Jersey labels (although there would still be a need to train workers to distinguish between the OSHA labels and the many other labels that the district court found were present on chemical containers).

8. *See* 29 C.F.R. § 1910.1200(f)(9) (requiring that employers "ensure that labels or other forms of warning are legible, in English, and prominently displayed on the container"); 29 C.F.R. § 1910.1200(f)(5)(ii) (requiring that employers "ensure that each container of hazardous chemicals in the workplace is labeled ... with ... appropriate hazard warnings"); 29 C.F.R. § 1910.1200(c) (defining "hazard warning" as "any words, pictures, symbols, or combination thereof appearing on a label or other appropriate form of warning which convey the hazard(s) of the chemical(s) in the container(s)").

standard were preempted as a matter of law, there would have been no need for *Hughey I* to remand this case to the district court.

We therefore hold that the district court's finding that the Right to Know Act does not stand as an obstacle to the accomplishment of the purposes of the federal standard is not clearly erroneous, and that the district court correctly concluded that section 14 of the Right to Know Act is not impliedly preempted.

## IV. CONCLUSION

The judgment of the district court will be affirmed. This Court's stay of the district court's judgment pending appeal will be vacated.