898 F.2d 274
 58 USLW 2565, 14 O.S.H. Cas.(BNA) 1485,
1990 O.S.H.D. (CCH) P 28,854
 ASSOCIATED INDUSTRIES OF MASSACHUSETTS, Plaintiff, Appellant,
v.
James F. SNOW, Commissioner of the Massachusetts Department
of Labor and Industries, Defendant, Appellee.
ASSOCIATED INDUSTRIES OF MASSACHUSETTS, Plaintiff, Appellee,
v.
James F. SNOW, Commissioner of the Massachusetts Department
of Labor and Industries, Defendant, Appellant.
 Nos. 89-1775, 89-1798.
 United States Court of Appeals,
First Circuit.
 Heard Jan. 9, 1990.
Decided March 15, 1990.
 
 Patrick W. Hanifin, with whom Wayne S. Henderson and the New England Legal Foundation, Boston, Mass., were on brief, for the Associated Industries of Massachusetts.
 Despena Fillios Billings, Asst. Atty. Gen., with whom James M. Shannon, Atty. Gen., Boston, Mass., was on brief, for the Com. of Mass.
 Donald J. Siegel, Shelley B. Kroll, and Segal, Roitman & Coleman, Boston, Mass., were on brief, for Massachusetts Public Health Ass'n; American Lung Ass'n of Massachusetts; Massachusetts Public Interest Research Group; Nat. Toxics Campaign; League of Women Voters of Massachusetts; Cambridge Hosp. Occupational and Environmental Health Center; Occupational/Environmental Health Service of Brigham and Women's Hospital; Massachusetts Coalition for Occupational Safety and Health; Occupational Health Service of Massachusetts Respiratory Hosp.; Service Employees Intern. Union, AFL-CIO; Massachusetts General Hosp. Occupational Medicine Clinic; Massachusetts Laborers' Dist. Council; Sheet Metal Workers Intern. Ass'n, Local No. 17; Intern. Ass'n of Heat and Frost Insulators and Asbestos Workers, Local No. 6; NECNAC; and Massachusetts Building Trades Council, amicus curiae.
 Before SELYA, Circuit Judge, ALDRICH and BOWNES, Senior Circuit Judges.
 BOWNES, Senior Circuit Judge.
 
 
 1
 These appeals involve the interplay between a state's exercise of its police powers and the federal government's regulation of occupational safety and health issues. They arise from a final summary judgment upholding most of the Commonwealth of Massachusetts' asbestos abatement statute and regulations (the Massachusetts standards)[1] against a federal preemption challenge brought by the Associated Industries of Massachusetts (AIM). Plaintiff-appellant AIM claims that the Massachusetts standards are preempted by the federal Occupational Safety and Health Act of 1970 (OSH Act)[2] and certain regulations promulgated under that Act.[3]
 
 I. BACKGROUND
 
 2
 As AIM points out, the issue is not whether asbestos is dangerous. It is. Although the fibrous mineral has numerous uses, particularly in building construction, it has been identified as a significant public health threat. Asbestos's tiny, indestructible fibers can crumble into powder and become airborne, travelling in the open air or through a building's ventilation system. When inhaled, asbestos dust lodges permanently in a person's lungs. Exposure may induce deadly diseases such as asbestosis, a scarring of the lungs that causes shortness of breath and often death, and mesothelioma, an incurable cancer of the abdominal lining. In the 1960s shipyard workers in Quincy, Massachusetts were among the first studied victims of asbestos-related diseases.
 
 
 3
 In 1975 the Massachusetts Legislature created a commission to assess the public health hazard of asbestos exposure in schools and public buildings and to investigate and prevent exposure to workers. 1975 Mass. Acts 58. The Commonwealth's Department of Labor and Industries gradually assumed the duties of the Asbestos Commission and, in 1987, at the direction of the Massachusetts Legislature, the Department promulgated the detailed regulations challenged here. See Mass.Regs.Code tit. 453, Secs. 6.00-6.17, 6.91-.93.
 
 
 4
 The federal Occupational Safety and Health Administration (OSHA) has also issued regulations relating to asbestos abatement. The Revised Standard for General Industry, 29 C.F.R. Sec. 1910.1001, and the Revised Standard for the Construction Industry, 29 C.F.R. Sec. 1926.58 (the Asbestos Standards), establish permissible asbestos exposure levels for workers and provide guidelines for employee training and work practices. OSHA's General Industry Hazard Communication Standard, 29 C.F.R. Sec. 1910.1200 and Construction Industry Hazard Communication Standard, 29 C.F.R. Sec. 1926.59 (the Hazard Communication Standards), pertain to the communication of information to workers about chemical hazards, including asbestos hazards, in the work place.
 
 
 5
 The chief difference between the two sets of standards is that the Massachusetts standards are more stringent. OSHA outlines general topics about which workers should be trained; Massachusetts sets out a detailed training curriculum, specifies who must be trained and who may do the training, and establishes a certification and licensing scheme linked to the training requirements. Massachusetts requires employers to give the Department of Labor and Industries advance notice of non-emergency projects involving any more than specified small amounts of asbestos exposure. OSHA sets a maximum "permissible exposure limit" and an "action level" and identifies certain work practices triggered at each level; Massachusetts requires the same, and other specified procedures, at a lower threshold of exposure. Finally, OSHA requires workers to follow certain rules regarding the use of respirators, protective clothing and medical monitoring; Massachusetts duplicates the OSHA clothing and monitoring requirements but at lower exposure levels, and calls for the use of different kinds of respirators.
 
 II. PROCEEDINGS BELOW
 
 6
 On September 21, 1988, AIM brought suit for declaratory and injunctive relief in the United States District Court for the District of Massachusetts against James F. Snow, as Commissioner of the Commonwealth's Department of Labor and Industries.[4] On March 14, 1989 AIM moved for summary judgment or, in the alternative, for a preliminary injunction staying the April 1, 1989 deadline for training of "asbestos associated project workers." See Mass.Regs.Code tit. 453, Sec. 6.03(7). The Commonwealth also moved for summary judgment. When the district court (Tauro, J.) denied AIM's request for a preliminary injunction, the organization filed an interlocutory appeal to the First Circuit. This court ordered expedited briefing of the issues and set a May 3 date for argument. We denied AIM's motion for an injunction pending appeal. On April 19, the parties negotiated a stipulation limiting the number of workers who would have to be trained under the Massachusetts standard, and AIM agreed to dismissal of its interlocutory appeal.
 
 
 7
 On July 12, 1989, 717 F.Supp. 951, the district court issued its order on the parties' cross motions for summary judgment, upholding the Massachusetts statute and all but one of the regulations. It adopted the rule, formulated by the Second Circuit in a similar case, that state standards are not expressly preempted by the OSH Act or OSHA standards if they have a "legitimate and substantial purpose apart from protecting asbestos workers." Memorandum of the district court at 5 (quoting Environmental Encapsulating Corp. v. New York City, 855 F.2d 48, 57 (2d Cir.1988)). Dividing the challenged regulations into three categories (the licensure, certification and training requirements, the work practice requirements and the worker protection requirements), the district court found that only the worker protection requirements, Mass.Regs.Code tit. 453, Sec. 6.15, which govern the use of disposable protective clothing and respirators, and medical monitoring of workers, failed this test. The district court further ruled that the remaining Massachusetts standards, although more stringent than the federal ones, are not an obstacle to the accomplishment of Congress's objectives and are therefore not impliedly preempted. AIM appealed and Massachusetts cross-appealed on the disposable clothing ruling. Massachusetts did not appeal the ruling that the respirator and medical monitoring requirements are preempted.
 
 III. FEDERAL PREEMPTION
 
 8
 Under the Supremacy Clause of Article VI of the United States Constitution, federal law may preempt state law in a variety of ways. When acting within constitutional limits, Congress may preempt state law by so stating in express terms. Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). Absent express language, preemption may be implied where federal legislation is so comprehensive as to leave no room for supplemental legislation. Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Even where Congress has not completely displaced state regulation, state law may be preempted to the extent that it actually conflicts with federal law. Such a conflict occurs either because compliance with both is physically impossible, or because state law stands as an obstacle to the accomplishment of the full objectives of Congress. See California Federal Savings & Loan Ass'n v. Guerra, 479 U.S. 272, 280-81, 107 S.Ct. 683, 689, 93 L.Ed.2d 613 (1987) (citing cases); Hillsborough County, Fla. v. Automated Medical Laboratories, Inc., 471 U.S. 707, 712-13, 105 S.Ct. 2371, 2374-75, 85 L.Ed.2d 714 (1985); Securities Industry Ass'n v. Connolly, 883 F.2d 1114, 1117-18 (1st Cir.1989); French v. Pan Am Express, Inc., 869 F.2d 1, 2 (1st Cir.1989). In determining whether a state statute is preempted by federal law and therefore invalid under the Supremacy Clause, our task is to ascertain the intent of Congress. California Federal Savings & Loan Ass'n, 479 U.S. at 280, 107 S.Ct. at 689.
 
 
 9
 AIM claims that the Massachusetts standards are expressly preempted by language in Section 18 of the OSH Act, 29 U.S.C. Sec. 667, and impliedly preempted because they "interfere with the exclusive federal regulatory scheme." We examine these claims in order.
 
 A. Express Preemption
 
 10
 Section 18 of the OSH Act governs the federal-state relationship with respect to regulation of occupational safety and health issues. It reads:
 
 
 11
 (a) Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title.
 
 
 12
 (b) Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated under section 655 of this title shall submit a State plan for the development of such standards and their enforcement.
 
 
 13
 29 U.S.C. Sec. 667. Although written in the form of a savings clause rather than a direct statement of preemption, this section clearly provides that if a federal standard on an occupational safety or health issue is in effect, a state cannot promulgate an occupational safety or health standard relating to that issue, unless it first submits the state plan to OSHA for approval. Environmental Encapsulating Corp. v. New York City, 855 F.2d at 55.
 
 
 14
 AIM contends that Section 18 preempts the entire Massachusetts scheme because the Commonwealth's standards share a common subject matter and purpose with OSHA's Asbestos and Hazard Communication Standards and because Massachusetts has not submitted a state plan. The Commonwealth counters that the OSH Act is limited by its terms and intent to the protection of workers. It contends that the Massachusetts standards are not preempted because they protect the public as well as workers. The Commonwealth argues that a state should not be barred from protecting the health of all its citizens simply because the most effective means for doing so is by regulating workers and work practices.
 
 
 15
 Massachusetts urges us to embrace a dual purpose preemption analysis such as the one applied by the Second Circuit in Environmental Encapsulating, 855 F.2d 48, and by the district court below. Under the Second Circuit's test, to the extent a state or local government can demonstrate its regulations have a "legitimate and substantial purpose apart from promotion of occupational health and safety," there is no preemption by the OSH Act. Id. at 57.
 
 
 16
 The court in Environmental Encapsulating was faced with a preemption challenge to the City of New York's training and certification program for workers who handle asbestos. Using the "substantial purpose apart" analysis, the Second Circuit upheld all but two of the city's training requirements, one concerning medical surveillance of asbestos abatement workers and the other governing instruction on worker respiratory protection. It found that the sole purpose of these two requirements was worker protection, while all of the other sections of the program, ranging from instruction on the physical characteristics of asbestos to workers' personal hygiene, had the legitimate and substantial purpose of promoting public safety and health. Therefore, the court held that the city's requirements were not preempted by OSHA's Revised Construction Standard. 855 F.2d at 57. See also National Solid Wastes Management Association v. Killian, No. 88-C-10732, slip op. at 5-11, 1989 WL 96438 (N.D.Ill. Aug. 14, 1989) (Illinois regulation requiring 4,000 hours of experience to qualify for a license had a "legitimate and substantial purpose apart from occupational safety and health," but requirement that workers be trained within Illinois did not).
 
 
 17
 The Third Circuit has applied a different test in cases involving the preemptive effect of the Hazard Communication Standards on the New Jersey and Pennsylvania Right-to-Know Acts. In New Jersey State Chamber of Commerce v. Hughey, 774 F.2d 587 (3d Cir.1985) (Hughey I ), the court struck down parts of the New Jersey act requiring employers to label chemical containers with warnings about work place chemical hazards because it found that their "primary purpose" was the promotion of occupational safety and health. It remanded the case to the district court, however, for determination of whether a regulation requiring warnings about general environmental, as opposed to work place, hazards was impliedly preempted. On remand, the district court concluded that the environmental hazard warning requirement was not preempted, and the Third Circuit affirmed. See New Jersey State Chamber of Commerce v. Hughey, 868 F.2d 621 (3d Cir.1989) (Hughey II ). See also Manufacturers Association of Tri-County v. Knepper, 801 F.2d 130 (3d Cir.1986), cert. denied, 484 U.S. 815, 108 S.Ct. 66, 98 L.Ed.2d 30 (1987) (upholding similar Pennsylvania labelling requirements which did not have as their "primary purpose" the promotion of occupational safety and health, but striking others that did).
 
 
 18
 Both the "primary purpose" and "substantial purpose apart" tests require inquiry into legislative intent. Rather than attempt to divine the Massachusetts Legislature's intent[5] in enacting its asbestos legislation, we look instead to the effect of the regulatory scheme. That is, we examine the effect that the Massachusetts standards have on their two stated purposes, the protection of "the general public and the occupational health and safety of workers." If the effect is to protect the public, the state regulation is not preempted. If the effect is solely to protect workers, the OSHA Standard prevails and the state regulation falls. If the effect is to protect the public by regulating workers and work places, the regulation stands because its ultimate effect is protection of the public.
 
 B. The Massachusetts Regulations
 
 19
 In order to apply this test, we, as did the district court, divide the challenged regulations into three categories and consider them seriatim.
 
 
 20
 1. Licensure, Certification and Training Requirements Mass.Regs.Code tit. 453, Secs. 6.03-6.14
 
 
 21
 These regulations establish a system for the training, licensure and certification of individuals involved in asbestos abatement work, whether as workers, supervisors, trainers, consultants or inspectors. The regulations also contain notice and record-keeping requirements.
 
 
 22
 The training curriculum is adopted almost verbatim from a model curriculum developed by the federal Environmental Protection Agency pursuant to the Asbestos Hazard Emergency Response Act of 1986 (AHERA), 15 U.S.C. Secs. 2641-2655. AHERA requires state governments, in conjunction with the EPA, to implement training and certification programs for asbestos contractors and their employees working in the nation's schools. 15 U.S.C. Sec. 2646. AHERA also mandates an EPA study to determine the extent of the danger posed by asbestos in other buildings, "[b]ecause there are no Federal standards whatsoever regulating daily exposure in other public and commercial buildings." 15 U.S.C. Sec. 2641(a)(4). There can be no question that the EPAs curriculum was designed to protect the public and is not preempted by OSHA's training requirements.[6] Each sweep of a broom by a worker not trained to recognize asbestos waste and dispose of it properly poses a threat to the health of the public. We find that the effect of the Massachusetts' training regulations is to protect the public and therefore hold that they are not expressly preempted by the federal standards.
 
 
 23
 OSHA does not require either certification or licensure, although a certification scheme was proposed to the agency during the rulemaking process. OSHA Summary and Explanation of the Revised Standard for General Industry, 51 Fed.Reg. 22612 at 22725 (June 20, 1986). AIM argues that because OSHA chose not to establish such a program, Massachusetts may not do so. We disagree. First, "[i]t would thwart the overriding congressional intent to promote worker safety if federal standards preempted state laws governing issues that are not federally regulated." Hughey I, 774 F.2d at 593. More importantly, Massachusetts' licensure and certification programs, as well as the notice and record-keeping provisions, enable the Commissioner of the Department of Labor and Industries to ensure that the substantive measures contained in the regulations are enforced. By requiring that contractors qualify for licensing by the Department of Labor and Industries, the regulations ensure that only responsible companies, employing trained personnel, are allowed to perform hazardous abatement work. The requirement of annual renewal of licenses, and the threat of revocation if safe procedures are not followed, promote continued accountability to the public. The effect is to ensure the viability of the whole Massachusetts program. To the extent that the substantive training and work practice measures protect the public, the licensure, certification, notice and record-keeping provisions do so as well.
 
 
 24
 2. Work Practice Requirements: Mass.Regs.Code tit. 453, Sec. 6.14
 
 
 25
 The work practice requirements attempt to prevent the release of asbestos from the work area by isolating that area and ensuring proper decontamination of the workers, equipment and air that flows from the work place to the outside environment. The specific requirements include: the construction of critical barriers to separate the abatement work site from public areas; the exclusion of unauthorized personnel from work areas and the posting of warning signs; the establishment of decontamination facilities for use by abatement workers and for the cleansing of equipment; the use of a work place ventilation system which prohibits the discharge of exhaust into occupied areas of a building; the wetting down and containerization of asbestos to prevent agitation and build-up of fibers; cleanup by high efficiency particulate air filtration ("HEPA") vacuuming and/or wet cleaning techniques; and air monitoring throughout the project and at its completion.
 
 
 26
 The OSHA standards do not address some of the topics covered by the Massachusetts requirements at all. And even where state and federal regulations cover the same topics, the specific requirements of the state regulations reveal that their purpose and effect is to protect the public while the purport of the federal regulations is limited to protecting the worker.[7] We hold that the work practice requirements of the Massachusetts standards are not expressly preempted because their effect is to protect the public from the dangers of asbestos pollution.
 
 
 27
 3. Worker Protection Requirements: Mass.Regs.Code tit. 453, Sec. 6.15
 
 
 28
 The district court found the worker protection requirements regulating the use of respirators, wearing of disposable protective clothing and medical monitoring expressly preempted because they have no legitimate and substantial purpose apart from worker protection. The Commonwealth does not appeal the ruling that the respirator and medical monitoring provisions are preempted, but argues that the protective clothing requirement is not preempted because it protects the public by preventing exposure of family members.
 
 
 29
 Under our "effect" test, the protective clothing requirement survives preemption. Although the provision falls under the general heading of "Worker Protection," the requirement protects the public in the same way as do other decontamination requirements such as showering before leaving the work place. It protects family members of asbestos workers who are exposed to a worker's clothing. The Commonwealth claims that when workers do not use the disposable protective clothing required by Sec. 6.15(2)(b), they bring the indestructible asbestos fibers into their homes on their work clothing. The fibers can become re-suspended in the air or passed to the clothing of other family members in the washing machine. There is evidence in the record of a 1985 study of shipyard workers and their families showing that 64.2% of the male workers and 11.3% of their wives had asbestosis, and that 9.7% of their offspring have the disease today. We see no reason why the Commonwealth cannot protect the health of the families of asbestos workers by requiring the workers to leave their contaminated clothing at work.
 
 
 30
 AIM also contends that the Hazard Communication standards expressly preempt the Massachusetts requirements because the federal standards contain the following provision:This occupational safety and health standard is intended to address comprehensively the issue of evaluating the potential hazards of chemicals, and communicating information concerning hazards and appropriate protective measures to employees and to preempt any legal requirements of a state, or political subdivision of a state, pertaining to the subject.... Under Section 18 of the Act, no state or political subdivision of a state may adopt or enforce, any requirement relating to the issue addressed by this Federal Standard, except pursuant to a Federally-approved state plan.
 
 
 31
 29 C.F.R. Sec. 1910.1200(a)(2) and 29 C.F.R. Sec. 1926.5900(a)(2). This language undoubtedly expresses an intent to preempt state and local regulation, and it is well-established that a federal agency acting within the scope of its congressionally delegated authority may so do. Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691, 698-99, 104 S.Ct. 2694, 2699-2700, 81 L.Ed.2d 580 (1984); Fidelity Federal Savings & Loan Ass'n, v. De la Cuesta, 458 U.S. 141, 153-154, 102 S.Ct. 3014, 3022-23, 73 L.Ed.2d 664 (1982). The Hazard Communication Standards, however, pertain only to the communication of information to employees about hazardous chemicals in their work areas and measures they can take to protect themselves. See 29 C.F.R. Sec. 1910.1200(b)(1) and (h); 29 C.F.R. Sec. 1926.5900(b)(1) and (h). Thus they preempt only state training programs aimed primarily at educating employees in methods of self-protection against work place hazards. Cf. Hughey I, 774 F.2d 587; Knepper, 801 F.2d 130; Hughey II, 868 F.2d 621; see also Note, "The Extent of OSHA Preemption of State Hazard Reporting Requirements," 88 Colum.L.Rev. 630, 640-41 (1988) (authored by John J. Manna, Jr.). Therefore, despite OSHA's proprietary language, the Hazard Communication standards do not change our conclusion that the Massachusetts standards are not expressly preempted.
 
 C. Implied Preemption
 
 32
 Even where Congress has not expressly stated an intent to displace state law, preemption may be found. There is a presumption, however, that state laws related to health or safety matters are not preempted. See Hillsborough County v. Automated Medical Laboratories Inc., 471 U.S. 707, 715, 105 S.Ct. 2371, 2376, 85 L.Ed.2d 714 (1985). "[A] state's police powers are not displaced by federal law unless there is compelling evidence that this was the manifest purpose of Congress. The burden of overcoming this presumption in favor of state law is heavy in those cases that rely on implied preemption, which rests in turn on inference." Environmental Encapsulating, 855 F.2d at 58 (citations omitted).
 
 
 33
 AIM contends that the Commonwealth's regulations are impliedly preempted because they block Congressional objectives by upsetting the balance of safety, health, technological and economic concerns struck by Congress. Citing various First Circuit cases, it argues that when Congress has struck a balance between competing public interests, the states are powerless to upset that balance in either direction. See Wood v. General Motors, 865 F.2d 395 (1st Cir.1988); Hyde Park Partners, L.P. v. Connolly, 839 F.2d 837 (1st Cir.1988); Hernandez-Colon v. Secretary of Labor, 835 F.2d 958 (1st Cir.1988); Palmer v. Liggett Group, Inc., 825 F.2d 620 (1st Cir.1987).
 
 
 34
 These cases do not lead us to the conclusion AIM would have us reach. The "balance" which AIM claims is at risk of being upset by the Massachusetts requirements is the balance between competing interests and purposes, not competing sovereigns. Wood, 865 F.2d 395, and Hernandez-Colon, 835 F.2d 958, involved Congress's distribution of power among federal, state and local governments. Palmer, 825 F.2d 620, and Hyde Park, 839 F.2d 837, did involve Congress's calibration of competing interests or purposes, but we do not find them applicable.
 
 
 35
 In Palmer we found that Congress's purpose in enacting the Federal Cigarette Labeling and Advertising Act was to strike a fair, effective balance between the competing policies of health protection and trade protection. That act explicitly states that its purpose is to establish a comprehensive federal program to inform the public that cigarette smoking may be hazardous and to protect commerce and the national economy "to the maximum extent" consistent with this policy and "not impeded by diverse, nonuniform, and confusing" regulations. 15 U.S.C. Sec. 1331. We held that a suit for damages against cigarette manufacturers and distributors, on a common-law theory of negligent failure to warn about the harmful effects of smoking, was preempted by the Cigarette Act because such a suit was tantamount to state regulation and would obstruct Congress's purpose. 825 F.2d at 626.
 
 
 36
 The stated purpose of the OSH Act is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. Sec. 651(b). The Act does list "feasibility" as one factor for OSHA to consider in formulating standards on toxic materials. 29 U.S.C. Sec. 655(b)(5). Nonetheless, we find no indication in the OSH Act and OSHA standards that commercial interests are to be given the commensurate weight they were accorded in the federal statute involved in Palmer. The main thrust of the OSH Act and OSHA regulations is protecting the safety and health of the nation's workers.
 
 
 37
 Nor does Hyde Park, 839 F.2d 837, change our conclusion. In that case we found that a Massachusetts disclosure rule pertaining to take-over bids altered a balance set by the federal Williams Act between management and offerors in a take-over situation. We held that the Massachusetts rule was preempted, not just because the balance was tipped, but because the resulting imbalance would work against shareholders, on whose behalf the Williams Act was passed. Id. at 853. Under Hyde Park, the question is not whether a congressionally calibrated system is altered by state law, but if altered, whether the change obstructs the purpose of Congress. Id. at 851.
 
 
 38
 The Massachusetts standards do not obstruct the purpose of Congress of assuring occupational safety and health. That a state law provision increases the regulatory burden on employers does not make the provision contrary to congressional intent. Hughey I, 774 F.2d at 593. The effect of the Commonwealth's regulations is to protect the public from the dangers of asbestos. In so doing, they strengthen rather than threaten the protection afforded workers by Congress.
 
 
 39
 The absence of any other grounds for finding implied preemption reinforce our conclusion that the Massachusetts standards are not impliedly preempted. AIM argues that OSHA has "occupied the occupational safety and health fields of asbestos and hazard communications", but we find ample indications to the contrary. Except in relation to the respirator requirement, which has been struck down as expressly preempted, AIM has not shown that it is "physically impossible to comply" with both the OSHA and Massachusetts standards. See Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963). The OSH Act explicitly left room for supplemental regulation by other federal agencies and by states that submitted plans to OSHA. OSHA's training guidelines are "undeniably general." Hughey II, 868 F.2d at 630. We agree with the district court that the OSH Act was intended to provide for the establishment of minimum, and not necessarily uniform, occupational safety and health standards throughout the country. See Environmental Encapsulating, 855 F.2d 48 at 59; see also Ohio Manufacturers Ass'n v. City of Akron, 801 F.2d 824, 831 (6th Cir.1986); United Steel Workers of America v. Auchter, 763 F.2d 728, 734 (3d Cir.1985).
 
 IV. CONCLUSION
 
 40
 We hold that except for the provisions regarding the use of respirators and medical monitoring of workers,[8] the Massachusetts asbestos abatement statute and regulations are not preempted by the OSH Act and the OSHA standards. The effect of the Commonwealth's asbestos abatement scheme is to protect the public and in so doing it does not obstruct congressional objectives. The respirator and medical monitoring provisions are expressly preempted because their sole effect is to protect the individual worker from asbestos-related diseases. Therefore, those provisions are severed from the Commonwealth's statute and regulations.[9] We thus reject AIM's appeal in its entirety and sustain the Commonwealth's cross appeal from the district court's ruling invalidating the disposable clothing standard.
 
 
 41
 Affirmed in part and reversed in part.
 
 
 42
 Costs awarded to appellee, Commonwealth of Massachusetts.
 
 
 
 [1]
 Mass.Gen.L. ch. 149, Secs. 6A-6F (1987), as amended by 1988 Mass. Acts 332; Mass.Regs.Code tit. 453, Sec. 6.00-6.17, 6.91-6.93 (1987), as amended March 5, 1989
 
 
 [2]
 Pub.L. No. 91-596, 84 Stat. 1590, codified at 29 U.S.C. Secs. 651-678
 
 
 [3]
 29 C.F.R. Secs. 1910.1001, 1910.1200, 1926.5800, 1926.5900 (1989)
 
 
 [4]
 The Department was named as a defendant in AIM's original Complaint but was dismissed in its Amended Complaint, January 20, 1989
 
 
 [5]
 The Massachusetts Legislature does not publish an official record of the hearings, debates, drafts and redrafts which constitute the legislative history of a statute
 
 
 [6]
 AHERA is Title II of the Toxic Substances Control Act, Pub.L. No. 94-469, 90 Stat. 2030, codified at 15 U.S.C. Sec. 2601 et seq. The Act expressly provides that EPA regulations issued under it are not occupational safety and health standards. 15 U.S.C. Sec. 2608(c)
 
 
 [7]
 Compare the state procedure regarding wetting asbestos with the federal procedure:
 Mass.Regs.Code tit. 453 Sec. 6.14(c)(1): Prior to its removal, asbestos materials shall be thoroughly wetted with water to which a surfactant has been added, or with substitute wetting solutions suitable to reduce the generation of dust. Water should not be applied in amounts that will cause run-off or leakage of water from the project area. Once removed, asbestos materials shall be kept wet until containerized for disposal.
 
 
 [29]
 C.F.R. Sec. 1910.1001(f)(1)(vi): Insofar as practicable, [asbestos] shall be handled, mixed, applied, removed, cut, scored, or otherwise worked in a wet state sufficient to prevent emission of airborne fibers so as to expose employees to levels in excess of [the exposure limits] prescribed in paragraph (c) of this section, unless the usefulness of the product would be diminished thereby
 
 
 [8]
 Mass.Gen.L. ch. 149, Sec. 6C, as amended by 1988 Mass. Acts 332; Mass.Regs.Code tit. 453, Secs. 6.15(1) and (3)
 
 
 [9]
 Severability is a question of state law. Watson v. Buck, 313 U.S. 387, 395-96, 61 S.Ct. 962, 964, 85 L.Ed. 1416 (1941). Massachusetts law establishes that if any portion of a statute is judged to be unconstitutional or invalid, that portion shall be severable. Mass.Gen.L. ch. 4, Sec. 6, cl. 11. Likewise, if any part of the Department of Labor and Industry's asbestos regulations are preempted those regulations are severable from the rest. Mass.Regs.Code tit. 453, Sec. 6.17