942 F.2d 48
 60 USLW 2135, Prod.Liab.Rep. (CCH) P 12,878,
15 O.S.H. Cas. (BNA) 1233,
1991 O.S.H.D. (CCH) P 29,450
 Cruz PEDRAZA, Alejandrina Pedraza, Roberto Pedraza and Mary
Ellen Pedraza, Plaintiffs, Appellees,
v.
SHELL OIL COMPANY, Defendant, Appellant.
Cruz PEDRAZA, Alejandrina Pedraza, Roberto Pedraza and Mary
Ellen Pedraza, Plaintiffs, Appellants,
v.
SHELL OIL CO., Defendant, Appellee.
 Nos. 90-1291, 90-1402.
 United States Court of Appeals,
First Circuit.
 Heard Sept. 14, 1990.
Decided Aug. 13, 1991.
 
 John B. Stewart, with whom Edward V. Leja and Moriarty, Donoghue & Leja, P.A., Springfield, Mass., were on brief, for plaintiffs-appellees.
 Burt Ballanfant, Houston, Tex., with whom Robert L. Leonard and Doherty, Wallace, Pillsbury & Murphy, Springfield, Mass., were on brief, for defendant-appellant.
 Before TORRUELLA and CYR, Circuit Judges, and BOWNES, Senior Circuit Judge.
 CYR, Circuit Judge.
 
 
 1
 Plaintiff Cruz Pedraza commenced a civil action in the United States District Court for the District of Massachusetts, alleging that he developed respiratory ailments from workplace exposure to Epichlorohydrin ("ECH"), a toxic chemical manufactured by defendant Shell Oil Co. ("Shell"). The district court dismissed the action on the ground that the Occupational Safety and Health Act, 29 U.S.C. § 655 et seq. ("OSHA"), preempts state law. Pedraza appeals. Shell cross-appeals a district court order disallowing Shell's motion for summary judgment under the applicable statute of limitations. We vacate the order of dismissal, dismiss the cross-appeal, and remand for further proceedings.
 
 
 2
 * BACKGROUND
 
 
 3
 The material facts are not in dispute. From 1972 through 1981, Pedraza was employed by United Technologies Corporation in Rocky Hill, Connecticut. During 1977, he was assigned to a chemical mixing operation which exposed him to ECH. Within a few weeks Pedraza experienced asthma symptoms for the first time. Although Pedraza was reassigned in late 1977 to work duties which did not entail ECH exposure, over the course of the next several years he continued to experience acute asthma symptoms.
 
 
 4
 On November 4, 1985, Pedraza brought the present diversity action, asserting an assortment of tort and warranty claims predicated on Connecticut law. Following discovery, defendant Shell moved for summary judgment on the ground that Pedraza's claims were time-barred and, alternatively, that Shell had discharged its duty to warn under the so-called "sophisticated user" defense. A United States magistrate judge recommended denial of summary judgment. Shell objected to the recommended disposition and argued, additionally, that OSHA and the related regulations promulgated by the Occupational Safety and Health Administration preempt Connecticut law. The district court directed entry of summary judgment for Shell on the preemption ground.
 
 II
 DISCUSSION
 A. Pedraza's Appeal
 
 5
 We review the grant of summary judgment de novo, employing the same standards utilized by the trial court. See Siegal v. American Honda Motor Co., Inc., 921 F.2d 15, 17 (1st Cir.1990); Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 30-31 (1st Cir.1990). Thus, in the present appeal we consider a pure issue of law: whether OSHA preempts state law.
 
 
 6
 The district court correctly observed that OSHA regulations establish federal restrictions on workplace exposure to ECH[1] and require employers to provide protective equipment for employees who work with hazardous substances.[2] The court concluded that the provisions of Connecticut common law and statutory law on which Pedraza's causes of action against Shell are predicated constitute state regulation in the field of occupational safety and health which must yield to OSHA. Pedraza v. Shell Oil Co., 729 F.Supp. 187, 188-89 (D.Mass.1990).[3]
 
 
 7
 The Supremacy Clause of the United States Constitution operates to preempt state laws which unduly interfere with federal law or policy. U.S. Const. art. VI, cl. 2. See also Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1, 211, 6 L.Ed. 23, 73 (1824); Securities Industry Ass'n v. Connolly, 883 F.2d 1114 (1st Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 2559, 109 L.Ed.2d 742 (1990). As we were reminded again recently, however, our preemption analysis begins with " 'the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' " Wisconsin Public Intervenor v. Mortier, --- U.S. ----, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991) (quoting Rice v. Santa Fe Elevator Co., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). The tort rules and kindred state law provisions invoked by Pedraza are well within Connecticut's "traditional authority to provide tort remedies to [its] citizens...." Silkwood v. Kerr-McGee Corp., 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984); see also International Paper Co. v. Ouellette, 479 U.S. 481, 503, 107 S.Ct. 805, 817, 93 L.Ed.2d 883 (1987). Consequently, we will not find federal preemption in the present case unless there is "an unambiguous congressional mandate to that effect." Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 146, 83 S.Ct. 1210, 1219, 10 L.Ed.2d 248 (1963). See also Hillsborough County v. Automated Medical Laboratories, Inc., 471 U.S. 707, 715, 105 S.Ct. 2371, 2376, 85 L.Ed.2d 714 (1985); Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977).
 
 
 8
 Preemption "always boils down to a matter of congressional intent." Connolly, 883 F.2d at 1115. See also Louisiana Public Service Comm'n v. FCC, 476 U.S. 355, 369, 106 S.Ct. 1890, 1899, 90 L.Ed.2d 369 (1986) ("The critical question in any pre-emption analysis is always whether Congress intended that federal regulation supersede state law."); Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 747, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985) ("in any pre-emption analysis, '[t]he purpose of Congress is the ultimate touchstone.' ") (citations omitted); Associated Industries of Massachusetts v. Snow, 898 F.2d 274, 278 (1st Cir.1990) (same). The task of interpretation is simplified substantially, of course, whenever "Congress has made its intent known through explicit statutory language." English v. General Electric Co., --- U.S. ----, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990).
 
 
 9
 Absent express preemption, the challenged state law must yield when it
 
 
 10
 regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a 'scheme of federal regulation ... so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' or where an Act of Congress 'touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'
 
 
 11
 English, 110 S.Ct. at 2275 (citations omitted). Finally, preemption will be inferred where the state law "actually conflicts with federal law." Id. Such a conflict arises where it is physically impossible to comply with both the federal and the state law or where "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " Id. (citation omitted). See also International Paper Co., 479 U.S. at 491-92, 107 S.Ct. at 811; Louisiana Public Service Comm'n, 476 U.S. at 368-69, 106 S.Ct. at 1898-99; Hillsborough County, 471 U.S. at 713, 105 S.Ct. at 2375.
 
 
 12
 Shell contends that OSHA preempts all the state-created rights and remedies underpinning Pedraza's claims, since the adjudication of private rights arising under state law would result in the imposition of prospective normative constraints on the manufacture and distribution of ECH. We address Shell's preemption claim by first examining in context the language of the OSHA preemption provisions. A sound statutory interpretation must encompass the relevant text as well as the structure and context of the enactment. We will " 'not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law....' " Philbrook v. Glodgett, 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975) (quoting United States v. Heirs of Boisdore, 49 U.S. (8 How.) 113, 122, 12 L.Ed. 1009 (1849)). See also Richards v. United States, 369 U.S. 1, 11, 82 S.Ct. 585, 591-92, 7 L.Ed.2d 492 (1962) ("a section of a statute should not be read in isolation from the context of the whole Act.").
 
 
 13
 The scope of OSHA preemption is outlined in two sections: (i) section 18,[4] which represents a general statement of preemptive intent, and (ii) section 4(b)(4), the "savings clause," which excepts from preemption a spectrum of state laws.
 
 
 14
 (i) Section 18
 
 
 15
 At its outer reaches section 18 preemption does not obtain unless there is an unapproved assertion of "jurisdiction under State law over any occupational safety or health issue" as to which a federal "standard" is already in place. See 29 C.F.R. 1901.2 ("Section 18(a) of the Act is read as preventing any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which a Federal standard has been issued under section 6 of the Act.") (emphasis added); Associated Industries of Massachusetts, 898 F.2d at 278 (Section 18 "provides that if a federal standard on an occupational safety or health issue is in effect, a state cannot promulgate an occupational safety or health standard relating to that issue, unless it first submits the state plan to OSHA for approval."). See also Puffer's Hardware Inc. v. Donovan, 742 F.2d 12, 16 (1st Cir.1984); National Solid Wastes Management Ass'n v. Killian, 918 F.2d 671, 677-78 (7th Cir.1990).
 
 
 16
 Section 3 in turn defines an occupational safety and health "standard" as one which "requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8) (1982); see also People v. Chicago Magnet Wire Corp., 126 Ill.2d 356, 128 Ill.Dec. 517, 520, 534 N.E.2d 962, 965 (§ 18 precludes "a State's development and enforcement of 'occupational health and safety standards.' ") (discussing OSHA preemption of State criminal laws) (citations omitted), cert. denied, --- U.S. ----, 110 S.Ct. 52, 107 L.Ed.2d 21 (1989). Thus, it is not surprising that substantial authority exists for the view that section 18 preempts the unapproved establishment of state standards and regulatory schemes in competition with OSHA, see, e.g., Environmental Encapsulating Corp. v. City of New York, 855 F.2d 48, 55 (2d Cir.1988); New Jersey State Chamber of Commerce v. Hughey, 774 F.2d 587, 592-93 (3d Cir.1985), appeal after remand, 868 F.2d 621 (3d Cir.), cert. denied, 492 U.S. 920, 109 S.Ct. 3246, 106 L.Ed.2d 593 (1989), but that there is no authority for the view that OSHA preempts provisions of state law of the sort relied on by Pedraza.
 
 
 17
 We are aware of no case which holds that OSHA preempts state tort law. Rather, most courts have been concerned with how OSHA affects tort actions, not with whether it preempts state tort law. Thus, every court faced with the issue has held that OSHA creates no private right of action. See, e.g., Pratico v. Portland Terminal Co., 783 F.2d 255, 266 (1st Cir.1985) ("The legislative history of § 653(b)(4) shows that the intent of the provision was merely to ensure that OSHA was not read to create a private right of action for injured workers which would allow them to bypass the otherwise exclusive remedy of workers' compensation."). We have embraced the majority view that the regulations promulgated under OSHA prescribe standards of care relevant in common law negligence actions. Id. at 263-65; see also Albrecht v. Baltimore & Ohio R.R. Co., 808 F.2d 329, 332 (4th Cir.1987); but see Minichello v. U.S. Industries, Inc., 756 F.2d 26, 29 (6th Cir.1985) ("To use OSHA regulations to establish whether a product is unreasonably dangerous is ... improper.") (product liability action brought by employer against product supplier).
 
 
 18
 While we discern in OSHA's language, structure and context a clear congressional signal that section 18 preempts unapproved assertions of state jurisdiction in the development and enforcement of standards relating to occupational health and safety issues in competition with federal standards, we find no warrant whatever for an interpretation which would preempt enforcement in the workplace of private rights and remedies traditionally afforded by state laws of general application.[5] Connecticut's accustomed maintenance of judicial fora for the enforcement of private rights in the workplace, under State laws of general application, seems to us a function far less prophylactic than reactive; less normative than compensatory; and less an arrogation of regulatory jurisdiction over an "occupational safety or health issue" than a neutral forum for the orderly adjustment of private disputes between, among others, the users and suppliers of toxic substances.
 
 
 19
 (ii) Section 4(b)(4)
 
 
 20
 We are persuaded that Congress, by its enactment of the "savings clause," further evinced its intention to spare these provisions of State law from preemption.
 
 
 21
 Nothing in this Act shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.
 
 
 22
 29 U.S.C. § 653(b)(4) (1982) (emphasis added).[6] There is a solid consensus that section 4(b)(4) operates to save state tort rules from preemption. See, e.g., National Solid Wastes Management Ass'n, 918 F.2d at 680 n. 9 (collecting cases). See also Atlas Roofing Co. v. Occupational Safety Comm'n, 430 U.S. 442, 445, 97 S.Ct. 1261, 1264, 51 L.Ed.2d 464 (1976) (noting that OSHA establishes a new statutory duty on the part of employers and creates new remedies; and stating: "Each remedy exists whether or not an employee is actually injured or killed as a result of the [unsafe or unhealthful] condition, and existing state statutory and common-law remedies for actual injury and death remain unaffected." (dictum)); Chicago Magnet Wire Corp., 128 Ill.Dec. at 523, 534 N.E.2d at 968 ("Congress expressly stated that OSHA was not intended to preempt two bases of liability that, like criminal law, operate to regulate workplace conduct and implicitly set safety standards--State worker's compensation and tort law.") (criminal laws).[7] See generally, Note, The Extent of OSHA Preemption of State Hazard Reporting Requirements, 88 Colum.L.Rev. 630, 641 (1988) (§ 4(b)(4) reveals "Congress' explicit recognition of the continued validity of state worker compensation and tort remedies...."); Note, Getting away with Murder: Federal OSHA Preemption of State Criminal Prosecutions for Industrial Accidents, 101 Harv.L.Rev. 535, 543 (1987) ("Indeed, section 4(b)(4) saves from preemption two forms of liability that, like criminal law, regulate workplace conduct and set implicit standards--state workers' compensation and tort law.").[8]
 
 
 23
 Thus, we are unpersuaded that the provisions of Connecticut law undergirding Pedraza's claims against Shell are eclipsed by OSHA.
 
 B. Shell's Cross-Appeal
 
 24
 Shell cross-appeals the district court order denying its motion for summary judgment on the ground that Pedraza's claims are time-barred and, alternatively, that it discharged its duty to warn under the so-called "sophisticated user" defense. An order denying summary judgment is not immediately appealable unless it comes within an exception to the "final judgment" rule. The United States Supreme Court puts it plainly:
 
 
 25
 We hold that a district court's order denying a motion to disqualify counsel is not appealable under § 1291 prior to final judgment in the underlying litigation. Insofar as the Eighth Circuit reached this conclusion, its decision is correct. But because its decision was contrary to precedent in the Circuit the court went further and reached the merits of the order appealed from. This approach, however, overlooks the fact that the finality requirement embodied in § 1291 is jurisdictional in nature. If the appellate court finds that the order from which a party seeks to appeal does not fall within the statute, its inquiry is over. A court lacks discretion to consider the merits of a case over which it is without jurisdiction, and thus, by definition, a jurisdictional ruling may never be made prospective only. We therefore hold that because the Court of Appeals was without jurisdiction to hear the appeal, it was without jurisdiction to decide the merits.
 
 
 26
 Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981) (emphasis added) (footnotes omitted).[9]
 
 
 27
 The interlocutory orders challenged on Shell's cross-appeal are not within any exception to the final judgment rule and implicate no issue related to the resolution of the appeal from the final order granting Shell's motion for summary judgment on the preemption ground.[10] We therefore conclude that Shell's cross-appeal must be dismissed.
 
 
 28
 The judgment of the district court is vacated and the case is remanded for further proceedings. Costs are awarded to plaintiffs-appellants.
 
 
 
 [1]
 See 29 C.F.R. § 1910.1000, Table Z-1
 
 
 [2]
 See 29 C.F.R. §§ 1910.132, 1910.133, 1910.134
 
 
 [3]
 The court did not address 29 U.S.C. § 653(b)(4), the "savings clause." See text at p. 53 infra
 
 
 [4]
 OSHA § 18 provides as follows:
 (a) Nothing in this Act shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title.
 (b) Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated under section 655 of this title shall submit a State plan for the development of such standards and their enforcement.
 29 U.S.C. § 667(a), (b) (1982).
 
 
 [5]
 The great majority of courts which have considered the issue holds that state criminal laws of general application are not preempted by OSHA, despite their normative impact. See National Solid Wastes Management Ass'n, 918 F.2d at 680 n. 9 (collecting cases). The New York Court of Appeals, for instance, recently ruled that OSHA does not so occupy the occupational health and safety field as to preempt by implication enforcement in the workplace of State criminal laws of general application. People v. Pymm, 76 N.Y.2d 511, 561 N.Y.S.2d 687, 691, 563 N.E.2d 1, 5 (1990) (relying on OSHA §§ 4(b)(4) and 18), cert. denied, --- U.S. ----, 111 S.Ct. 958, 112 L.Ed.2d 1046 (1991). The court reasoned that State criminal laws of general application are "ex post, reactive measures, focusing on conduct after an injury has occurred," and do not fit within the definition of "standard" (viz., "ex ante, prophylactic measures prescribing or proscribing specific practices"). Id. Likewise, the private rights and remedies implicated by Pedraza's claims against Shell hardly qualify as "standards," within the meaning of section 3, since they too are more "ex post, reactive" than prescriptive or normative. See also National Solid Wastes Management Ass'n, 918 F.2d at 680 n. 9 (tort laws "are not 'standards' within the meaning of 29 U.S.C. section 652(8).")
 
 
 [6]
 We are unpersuaded by Shell's ejusdem generis argument, which would render § 4(b)(4) inapposite to the provisions of Connecticut law on which Pedraza relies. Shell argues that only those state laws which are in the nature of workers' compensation laws come within the scope of the savings clause. Its argument implicitly assumes that though traditional private rights and remedies between employer and employee arising under state law are expressly saved from preemption by § 4(b)(4), those private rights and remedies which have a much less direct connection with the workplace were meant, for some unarticulated reason, to be preempted. We are unable either to ascribe a plausible reason for such a result or to discern such a congressional intent. Having seen no reason to preempt existing state law rights and remedies between employer and employee--the principal participants in the workplace, and the only parties whose relationship is regulated by OSHA, McKinnon v. Skil Corp., 638 F.2d 270, 275 (1st Cir.1981) (OSHA's "terms apply only to employers") (citations omitted)--Congress almost certainly did not intend to preempt, sub silentio, the right of an employee to bring an action for damages against a third-party supplier of products used in the workplace. See infra note 7. We would be very reluctant to infer preemptive intent absent some indication that the state law could have a significant adverse regulatory impact on OSHA's mission in the workplace
 Section 4(b)(4) plainly expresses Congress' intention to preserve workers' compensation laws and the rights and duties of employers and employees under state laws relating to injuries, disease or death arising in the course of employment. Nevertheless, notwithstanding that Connecticut statutory law preserves Pedraza's right to sue Shell in these circumstances, see Conn.Gen.Stat.Ann. § 31-293(a), under Shell's view Pedraza's right to seek private redress for workplace injury or disease allegedly caused by the employer's ECH supplier would be preempted. Shell cannot insist simultaneously that § 4(b)(4)'s reference to workers' compensation laws modifies the scope of the savings clause and does so more restrictively than the workers' compensation law itself.
 
 
 [7]
 Although OSHA prescribes various criminal and civil penalties against employers who violate either the regulations or the general duty to provide a safe workplace, see id. § 666 (1982), the overriding purpose of OSHA is to prevent workplace injuries, not to impose penalties on employers who fail to provide their employees with safe working conditions. See Whirlpool Corp. v. Marshall, 445 U.S. 1, 12, 100 S.Ct. 883, 890, 63 L.Ed.2d 154 (1980) (OSHA "is prophylactic in nature. The Act does not wait for an employee to die or become injured. It authorizes the promulgation of health and safety standards ... in the hope that these will act to prevent deaths or injuries from ever occurring.") (citations omitted)
 It is noteworthy as well that OSHA provides no replacement remedy for workplace injuries, disease or death caused to employees by suppliers of products used in the workplace. As the Supreme Court has noted, "[i]t is difficult to believe that Congress would, without comment, remove all means of judicial recourse for those injured by illegal conduct." Silkwood, 464 U.S. at 251, 104 S.Ct. at 623.
 
 
 [8]
 What little legislative history we have discovered leaves even less doubt that § 4(b)(4) evinces a congressional intent to preserve state tort law from preemption. In a letter to the Chairman of the House Subcommittee on Labor, the Solicitor of Labor explained that OSHA "would in no way affect the present status of the law with regard to workmen's compensation legislation or private tort actions." Pratico, 783 F.2d at 266 (quoting Occupational Health and Safety Act of 1969: Hearings on H.R. 843, H.R. 3809, H.R. 4294, and H.R. 13373 before Select Subcomm. on Education and Labor, 91st Cong., 1st Sess., Pt. 2, at 1592-93 (letter of L.H. Silberman, Solicitor of Labor) (emphasis added))
 
 
 [9]
 The Seventh Circuit has dealt in similar fashion with an order denying a motion for summary judgment based on an affirmative defense
 As to appellant's contention that the denial of its motion for summary judgment should be presently appealable as it constituted a denial of a 'claim of right' founded on the statutory immunity from indemnification, the obvious reply is that denials of summary judgment are interlocutory decrees, not appealable, irrespective of the burden of having to go to trial. Pacific U. Conference, Etc. v. Marshall, 434 U.S. 1305, 98 S.Ct. 2, 54 L.Ed.2d 17 (1977); United States v. Florian, 312 U.S. 656, 61 S.Ct. 713, 85 L.Ed. 1105, reh. denied, 312 U.S. 715, 61 S.Ct. 738, 85 L.Ed. 1145 (1941). There is nothing peculiar in the asserted 'claim of right' as compared to every other right where the denial of summary judgment is not appealable. Appellant's assertion of the applicability of the Georgia statute is nothing more than an assertion of an affirmative defense whose denial is also not appealable. Smith v. Benedict, 279 F.2d 211 (7th Cir.1960); County of Hennepin v. Aetna Cas. & Sur. Co., 587 F.2d 945 (8th Cir.1978).
 Freeman v. Kohl & Vick Machine Works, Inc., 673 F.2d 196, 200 (7th Cir.1982) (emphasis added) (footnotes omitted).
 
 
 [10]
 Thus, even when presented with an interlocutory appeal from an order denying summary judgment on the ground of qualified immunity, we have so far refrained from endorsing any form of pendent appellate jurisdiction over otherwise nonappealable interlocutory orders. Roque-Rodriguez v. Lema Moya, 926 F.2d 103, 105 n. 2 (1st Cir.1991) ("To date, this circuit has refrained from attempting to exercise 'pendent appellate jurisdiction over matters beyond those bound up in the qualified immunity inquiry.' See Morales v. Ramirez, 906 F.2d 784, 787 n. 2 (1st Cir.1990)."). The "policy against piecemeal review is preserved" by careful adherence to the "final judgment" rule. See, e.g., Makuc v. American Honda Motor Co., 692 F.2d 172, 173-74 (1st Cir.1982) (per curiam) (declining to review district court's denial of rule 54(b) certification of interlocutory order); Roque-Rodriguez, 926 F.2d at 105 (" 'Notwithstanding that we have jurisdiction to review the denial of qualified immunity midstream, [a]ny additional claim presented to and rejected by the district court must independently satisfy the collateral-order exception to the final-judgment rule in order for us to address it on an interlocutory appeal.' " Domegan [v. Fair ], 859 F.2d [1059,] 1061-62 [ (1st Cir.1988) ] quoting Bonitz v. Fair, 804 F.2d 164, 173 (1st Cir.1986)."); Morales v. Ramirez, 906 F.2d 784, 787 (1st Cir.1990) ("We have recognized before that, in certain cases, some aspect of the merits may be 'inexorably intertwined' with the issue of qualified immunity. Unwin [v. Campbell ], 863 F.2d [124,] 133 n. 9 [ (1st Cir.1988) ].")